RueeíN, Chief-Justice.
 

 This is an application by petition, to prove a paper as the will of
 
 Frauds Porie,
 
 deceased. It is made by persons who claim an interest under the paper, as legatees and devisees. It comes before this Court on-appeal from the decision of
 
 the
 
 Superior Court dismissing the petition, and the questions here arise on the pleadings, and a case agreed by the parties in the record.
 

 This is not an original application. It is stated in the petition that Barrow and
 
 Southerland
 
 named in the paper as the executors, did in that character offer the same paper for probate in 1810, to which
 
 Daniel Redmond,
 
 the father of the petitioners, and the husband of
 
 Eliaa~ heth,
 
 the only child of Porie,entered a
 
 caveat.
 
 Thatthere-upon an issue of
 
 devisavit vel non.
 
 was made up,on which the jury found, that the paper was not the last will and testament of the party deceased, upon which the Court, pronounced against the paper as a'wiil, and granted administration to
 
 Redmond,
 
 the caveator. The petitioners allege that the verdict was the result of some unaccountable infatuation or corruption of the jury,or of a fraudulent combination and contrivance between the executors and
 
 Redmond,
 
 and they found the charges on the circumstances, that
 
 the factum
 
 of the will, and the sanity of
 
 Porie
 
 were indubitably proved,
 
 and that the
 
 executors neglected to appeal.
 

 The paper is exhibited and contains thefollowingpro-visions — “ my will is that my houses and lots, together, with my plantation be rented out by my executors for eighteen years, and then to he sold by my executors.” The profits of the whole, except the real estate to he paid
 
 *434
 
 to liis daughter by bis executors for that term. The paper then goes on, “ my will further is, that my exec a tors shall hold all the residue of my estate in their hands for the said term-of eighteen years, and at the end thereof my will is that two thirds of the estate, including the houses, lots, plantation and other tilings so remaining in the hands of my executors, shall be equally divided or belong to the heir or heirs of her body, which my said daughter may have at that time, and the other third to be retained by my executors during the life of my daughter for her use, and at her death to go to such children as she may then have,” in certain proportions.
 

 Redmond
 
 disposed of all the personal estate, (which was a large one,) to persons unknown, and he and his wife conveyed the lands in fee, and they have since come by purchase, for valuable consideration,
 
 to Josiah Collins,
 
 who is in possession claiming title. .It is admitted in the case agreed, that he had no notice of any. defect of title when he purchased.
 

 The petitioners are the only children
 
 at Mrs. Redmond,
 
 of whom one was born and of very tender years, at the former trial, and the other soon afterwards, and this proceeding was instituted soon after their coining to-full age. Both their father and mother arc dead.
 

 The prayer is that the paper may now be admitted to probate, and that a copy of the petition maybe issued to
 
 ■Collins,
 
 and he required to answer, and afterwards it was amended by having copies served on the executors, and calling for an answer from them.
 

 The answer of
 
 Collins
 
 states the circumstances of his purchase, as already mentioned. Those of the executors explain the details of the trial, and admit that the verdict was in their opinion erroneous, hut they deny any fraud on their part, and state that they employed respectable counsel and offered all the necessary proof, and under advice did.not consider themselves bound to appeal, and incur the risk of costs without any interest of their own.
 

 The case was argued at the bar upon the footing that the executors were bound to appeal, after having under
 
 *435
 
 taken the office, and that thole neglect in that respect was a distinct ground of fraud or
 
 laches,
 
 on which this application ought to be sustained. The court is certainly not satisfied with the correctness of that conclusion, if the premises were admitted. The misconduct of the executors might subject them, in the,proper court, to the demand of those whose rights as legatees, had been prejudiced by their errors, omissions or frauds. That would he upon the idea, that the effect of-such errors, omission or fraud, was a sentence upon the will itself, by which those rights were lost. But that sentence itself, as between the parties to.it, or considering it as a proceeding
 
 inrejn,
 
 as to those hound by the thing done, can be impeached only on the ground of
 
 collusion
 
 between those charged with taking care of the interests of the applicants, and the opposite party. What rule the court might feel it necessary to adopt in such a case of collusion — ■ playing into each others hands — it would be premature now to mention. In the case before us, it would be deemed clear by 11s on the proofs, that there is nothing like it, and probably we might conclude iii like manner, that the
 
 laches
 
 of the executors in not appealing was not fraudulent, that is
 
 mala fide,
 
 to abandon the legatees, hut arose from a misapprehension of their duty and of their personal liability for costs. But we do not enter into those enquiries at all, because the record contains a statement of facts on which the Superior Court decided, aiul which is inserted in the record as a
 
 “case agreed on by the
 
 parties,” for this court. In that it is expressly stated that the finding of the jury was probably wrong, owing to a misapprehension by the jury of the nature Of the issue, but was
 
 not
 
 the result of any combination between the executors and
 
 Redmond,
 
 or of fraud on'the_part of the executors. The trial was therefore fair, and the executors kept hack none of the proper proofs. They made a case on which the paper ought, as they then-said, and as the petitioners now say, to have been pronounced a good will.' The error was that of the tribunal, anil not that of the parties. The case is therefore now to be considered as one, in which the'legatee
 
 *436
 
 propounds the will a second lime, ami asks bis allega-t.ion to be sustained ami admitted to proof, upon the sole • . ground that the former verdirt and sentence was m itself wrong. It does not appear indeed what were the proofs offered before, nor can it be expected according to .our mode of proceeding by jury trial, upon
 
 wo a voce
 
 testimony, that it should easily be made thus to appear. But it must be taken, that no new proofs are to be of-
 
 n
 
 , , ,, * , , „ tera!, because there is neither a case made, that proofs then existing were held back by the executors, or that other proofs have since boon discovered by the present parties. The application then is to the same Court of probate, which formerly pronounced against the will, now to pronounce in favor of it upon the same evidence, or to open the case, for evidence at large, without shewing that such evidence was not before given, or could not then haye been given.
 

 
 *435
 
 A mistake in a verdict in the County Court, finding against a proposed will, without collusion between the executors and the caveator, is no reason for permitting it to be xepropottnded by a legatee, altho’ the result would have been different, had the exe-tors appealed.
 

 An
 
 erroneous verdict and sentence against a
 
 *436
 
 w;n cannot be set aside, in the court on an allegation and proof of new-Iy discovered testimony.
 

 In whatever tribunal such an application shall be made, whether of law, of equity, or of ordinary, it must be rejected upon one general principle of universal and necessary application, that there must be an end of litigation, and that where
 
 the same case
 
 has been once appropriately and judicially examined and decided, the decision is conclusive.
 

 The case before the Court it is contended is without that principle, because
 
 the
 
 persons now propounding the will, were not parties
 
 to
 
 that proceeding, and their interests ought not to be bound by the judgment. .
 

 The question is somewhat novel in the Courts of this State, but much of its difficulty has been removed by the researches of the counsel on both sides, into the adjudi-. cations of the Courts of probate, from which the idea of our own has been derived, and the course of proceeding, and principles of action adopted by those Courts — ■ These have all been considered by the Court, assisted by the arguments of real ability offered at the bar. The summary of the doctrine touching those peculiar jurisdictions, is that they proceed according to the civil law_ Their action is
 
 in rem,
 
 and hence when a matter is not withiu their jurisdiction, their sentence is void, and when
 
 *437
 
 within it, it is conclusive it pon other courts, and upon all persons until vacated' in the Court itself which passed it. But as every judicatory having any pretensions to administer a code of law so as to make it practically a just system., having respect to thcrights of persons in the thing, these tribunals do not hold those bound hy the sentence, who had no notice of the pendency of the proceedings on which it was pronounced. At the instance of one thus situated and concerned in interest, the former decree is called in, and the matter again taken
 
 sub jit dice.
 
 Proceeding
 
 in revi,
 
 it has peculiar modes by which persons arc to be affected with notice, ov may contest an application before it may be made,or may become parties, as we express it, at common law. When a will is offered for probate
 
 an allegation in writing is exhibited, stating
 
 the will, the circumstances of the party deceased, the
 
 factum
 
 of the will, the intention that it should be testamentary, its attestation, and all the proofs the persons .propounding the allegation can, and expects to make. Thero are no parties made, that Is, none stated in the allegation itself, on whom process is to be served, to constitute an adversary contest. If the case made in it be insufficient to establish the will, the opinion of the Court is expressed thereon in the first instance, and the allegation propounding the will is
 
 rejected. If it be
 
 sufficient, it is admitted to proof by sentence; and the person who put in the allegation is thereby allowed to examine the witnesses mentioned hy him, to the points stated in the allegation, and if the proofs support the allegation, the decree is of course. To these proceedings no individual is necessarily a party but the person propounding the paper, nor is any bound conclusively fey them, but those who are privy to them, that is, have knowledge of them either actual or presumed. But all may become parties and will be heard upon making an interest in themselves appear. To enable the propounds* to bind others a decree is taken out by him author-ising him to summon ail persons, “to see proceedings,” not to become parties, but to witness what is going on, and take sides if they think proper. If the propounder
 
 *438
 
 does not chose to adopt that course, he ¡Ray at once take his decree; which in relation to this subject is called proving the will in common form, if he take out a decree and summon those in interest against him.
 
 “to see
 
 proceedings” they are concluded, whether they appear and put in an allegation against the will or not, and as against those summoned this is called probate in solemn form.
 

 
 *437
 
 A sentence for or against a will, is not binding on those wlio ate not parties or privies.
 

 But privies are those who claim through a party, or who have no* tice of the proceeding.
 

 Probate in common form, is, where the next of kin have no notice.
 

 
 *438
 
 Probate in solemn form, is, where they are cited to see the proceedings.
 

 Similar In its affect to the last is the case of intervention by tho next of kin, although not citedi
 

 In none o_£ these cases can a sentence be re-ex amined at the instance of one who is a party or privy to it
 

 And thisprivi, ty may he shown
 
 dehors
 
 then cord by proof
 
 in
 
 y
 
 ais.
 

 But besides these methods, there is another, .by which persons may be heard and concluded. If the propoun-der will not take,out a decree “tosee proceedings,” a person in interest is not bound to wait the result of that proceeding, and then prefer an allegation to call in the decree made on it, and asserting his own rights ; but ho may at once
 
 “
 
 intervene” by a counter allegation, be-, cause the proceeding is
 
 in rem
 
 ami all shall be heard.— Upon which intervention each of the persons are of course bound by the sentence as before. But in none of these cases, is the sentence re-ex ami ¡table at the instance of one who before propounded the allegation, or who intervened, or who was summoned to see proceedings,or who is represented in fact or in legal contemplation by one thus situated. Differing somewhat in the forms of proceeding, yet in substance these courts thus.appear to act upon the same great fundamental principle of justice, which guides the courts of common law, in determining who shall or shall not bo bound
 
 by
 
 their adjudications. The latter courts being courts of record, look only to the record for the parties, and the obligation of the judgment. The court of the ordinary is not a court of record, and therefore, in each case, the enquiry is open, who was, and was not privy to the proceedings. Privity is established by the allegation died, whether of propounding or of intervening,and by the summons on file “to see proceedings”. Thus far the privity is shewn by similar, though not by the same means, But the "ecclesiastical courts take a further step, and allowthe privity to be, proved by the testimony of witnesses, or otherwise
 
 in pais.
 

 The whole doctrine qf probates was gone into upon •the argument mope at large than we deem it necessary
 
 *439
 
 †0 jmrsue p. It nlay |)0 useful llOWevei', to advert to the tliat probate in common form may be called in at any time according to the cases of
 
 Satterthwaite
 
 v.
 
 Satterthwaite,
 
 (3
 
 Phillim.
 
 1) and
 
 Finncane
 
 v.
 
 Gayfere
 
 ( 3
 
 lb.
 
 405). Upon the principle of common justice before mentioned, this is generally true, because a probate in that form implies that there was no privity in the »extof kin, and even the receipt of a legacy under the will by one of the next of kin will not in all cases',b ar his x*igbt ca^ ^01’ a l>i’°l>&tc iíi solemn form."
 
 (Core
 
 v.
 
 Spencer
 
 in Bell v.
 
 Armstrong 1 Add.
 
 365). But an acquiescence for a long time not accounted for, would bar him, either as implying a waiver of right, or notice of the former proceedings.
 
 (Bell v. Armstrong).
 
 And it is settled that 0510 °f the next of kin is barred from calling in a jiro-bate by being cognisant of a prior suit, in which the will ,, , , was contested by others ol the next ol km, though not himself an intervener, nor summoned to see proceedings, > - ,, ' , „ , '
 
 (Newell
 
 v.
 
 Weeks,
 
 2
 
 Phillim
 
 224.
 
 Wood
 
 v.
 
 Medley,
 
 1
 
 Hagg,
 
 645). The cases of
 
 Dickerson
 
 v.
 
 Stewart (1
 
 Mur.
 
 99.) Moss v. Vincent
 
 (2
 
 Car. Law Rep.
 
 414) and
 
 Jeffreys v. Alston, (Ibid
 
 634) adopt the same principle here.
 

 Probate in radbiarily^be^re-voked at the in-of kin.0™16 neXt
 

 Because its form arenot pivy'^to it- ■
 

 This presump-tionmay be repelled by lapse of time, or notice of a contest between the executor and another of the next of kin.
 

 But courts of probate act upon different pies in apphea-tions to revoke letters of adminis-nation and re-propound a will teen^rejected°nCe
 

 the case of ‘a probate in'common form, and the proceeding to call it in, is very different
 
 from,
 
 and has - 3Utl° {Tl,licat.ioil to that of calling in administration, and of a second attempt to prove the same paper as a will. “ ^ -ie Proper solution of the latter question in our law, renders it necessary to consider the paper first as a testament, and then as a will. In each point of view, tiie present applicants appear to have an interest, in the first as legatees of a part of the personal estate, and in the latter as entitled either to the legal estate in the land as heirs of their mother, or as
 
 cestui qne trusts,
 
 under the provisions of the will, of the proceeds of the sales of it. As a testament undoubtedly the executors themselves could not repropound the paper. First principles forbid that, since-if they could the sentence, would not be final in the court pronouncing it, for any purpose. It may be yielded that upon newly discovered ev_ idencethey might. If they could in that case, it void-
 
 *440
 
 be allowable only when applied for in due season, and under such circumstances as would induce a Court of Equity to order a verdict at law, obtained by fraud or surprise, to be set aside and tiie issue retried. The resort to equity is in that case rendered necessary by tiie inability of a court of law to reform its judgments after, they are rendered. The ecclesiastical courts are uot under that restraint, and therefore the parties affected need not apply to equity. But the principle on which equity relieves against a judgment is a sound one, and is the only one on which the ecclesiastical court can regulate its own discretion. Hence it seems agreed that upon facts
 
 novita pervertía,
 
 and only in that case, an executor might re-propound a will before pronounced against
 
 (Wood
 
 v
 
 Medley, 1 Hagg. 64
 
 5.) The question is whether one claiming as legatee can do in this respect, what the executor himself cannot. It is laid down both by common law, and ecclesiastical authorities that the person alone by whom a testament can be proved is the executor named in it.
 
 (Salk.
 
 309,
 
 Swinb. Pt.
 
 6 §. 12,) and that he may be summoned by tiie Ordinary to produce the testament, prove it, and take on himself its execution, or refuse the same. This summons, the Ordinary will issue at the instance of any person having an interest, even a creditor of the party deceased, and much more one to whom a legacy is given, in the paper, and it is required by one act of
 
 1777, (Rev. ch.
 
 114, § 52,) to be issued by the County Court. Doubtless if the executor renounce, any other person interested, may propound the will. Thus far the executors and legatees are viewed as persons having distinct rights and duties. But if the executor of his own accord, or on citation propound the paper himself as a testament, we find no case or principle which requires that the legatee shall also propound tiie paper, or intervene, or be cited, in order to make a sentence of rejection obligatory on him. Although not formally or apparently upon the files of the Court, personally privy to the proceedings, he is so substantially through the executors. The executor is called
 
 pars principalis
 
 or
 
 legitimus contradictor
 
 who is
 
 *441
 
 bound and authorised to act for all persons entitled as legatees under the testament, nay in
 
 Wood
 
 v
 
 Medley,
 
 Sir
 
 John Nicholl
 
 said he was more. ííe ivas the person es-pecially selected by the party deceased to carry his will into
 
 effect.
 
 In that case there were two papers, in one °** w**'c*‘ CmiííIí/ was named as executor, and in the oth-er not; by the latter alone the interest arose to
 
 Wood.
 
 propounded both, and his allegation was rejected. Afterwards
 
 Wood
 
 propounded an allegation to call in the administration, on which the administrator appeared under protest, which was allowed to stand over, in order that the legatee might, on shewing that he was not cognisant of the former proceedings, bring in an allegation on the testament under
 
 which he claimed, because
 
 the two papers were distinct, and the legatees claimed under that in which no executor was named.—
 
 Wood
 
 then put in an allegation propounding both papers and praying probate to
 
 Cundy,
 
 which was not admitted to proof, but rejected on its own terms and the affidavits annexed. This was upon two grounds : the one, that although the interest of
 
 Wood
 
 arose on one of the papers only, yet he did not swear that the facts alledged by him were newly discovered, and that he believed he should make due proof of them, which had been the condition on which the allegation was admitted, without deciding on ■ the protest. The other, that without proof of collusion, the legatee was bound by the former.sentence upon those papers, when both of them were propounded by Cundy, then alleged, and also again in this proceeding, alleged to he the executor of both. The judge expresses a doubt whether considering the form in which the allegation is brought in, alleging
 
 Cundy to be executor,
 
 and probate to be made by him, he ought to consider any but the last point. But assuming that not to be law, he thinks the case for the administrator, because the affidavit was insufficient as to new discoveries, and because the tacts alleged did not make the paper a will. But he lays down the doctrine generally in this case and in the previous one of
 
 Colvin
 
 v
 
 Frazier,
 
 (1
 
 Hagg
 
 107,) that the legatees are bound by the acts of the executor in respect to pro
 
 *442
 
 bate, unless there be collusion. What would be the effect of collusion upon the proceedings iu that Court, or how the legatee could be redressed therefor, — whether in that Court, or in a Court of Equity — he does not then say : nor, as this is not a case of that sort, is it necessary we should say.
 

 
 *440
 
 This never- is done at the instance of the exe-lypropoundedTt’ except in cases ^^newíy dkcov-ered testimony,
 

 ^¡¡j when the executor renounces.
 

 But the exeeu. tor. is. boíh
 
 Pars ^lümus^ontm.
 
 an<l sen-tenca against a
 
 *441
 
 will
 
 bona fide
 
 him°™nds dl persons interest-ceptunderspecial ciroumstances.
 

 
 *442
 
 There is a privity between the executor, and legatees, and creditors, which causes the latter to be
 
 pri-ma facie
 
 bound by the acts of the former in respect of proceedings to establish the testament, and. obtain probate. By the appointment the executor takes in the first instance, the whole legal estate in the personal property. He is delegated by the testator- to carry his will into effect, to guard the interest of his legatees, and especially those under disabilities, and of his creditors, against all other persons. He is therefore the
 
 pars principalis
 
 through whom all the others derive their interest, and who, in a controversy with third persons upon the validity of the instrument by which his office is constituted, and their interests conferred through him, he is a necessary, and the only necessary actor.— Hence he is deemed the legitimate allegator or contra-dictor, and all other persons arc bound by his acts, as his is the primary interest, and theirs are dependant upon, and deduced from his. This is in truth, but another application of a well known principle both of Common law and of Equity. An executor is not obliged to plead the Statute of Limitations. He may confess judgment to creditors. The legatees are bound at law, and also in Equity, unless in the latter- case they can shew the debt not to be due, and collusion between him and the pretended creditor. So the executor alone brings a bill for an equitable money demand of the testator, and is the only necessary party to a bill by creditors for an account of the assets
 
 ;
 
 neither the particular nor the residuary legatee being required, although the amount of assets to satisfy them may he affected.— It may be taken then as the settled doctrine of the ecclesiastical courts, that unless under special circumstances the legatees though not intervening nor cited, are bound
 
 *443
 
 by a sentence rejecting a testament. They take benefit by a sentence pronouncing for the paper, and must submit to the consequences of a contrary one. No easels found ? that infancy or coverture .or non-residence, or that the legatee was even noti«
 
 esse,
 
 are of themselves such special circumstances. It would be most unreasonable that it should be, for it would expose
 
 the
 
 administrator to successive attacks from each legatee as he came of age, or into being, and there would be no security for property bought under the warrant of an apparent legal authority, as an administration granted when there is a wifi, is void, and no title can be made under it. What might be the effect of a mere attempt of the executor
 
 ex parte
 
 to obtain probate in common form in our courts, which was not at first allowed, might admit of question, as respected either his own right to offer the testament second time, or that of a legatee to summon him to do g0? Our practice is so very informal, having no vestige ^ recor(] of such an application, as to render it probable that the sentence would not be considered in itself definitive to any purpose. But wo think clearly that a verdict and judgment upon an issue formally made up between the executor and one of the next of Icin, upon wycji jf found for the executor, tiic probate, as between . .... , „ those parties would be in solemn lorm, and settle the 0p flie legatees under the will, is also when found ° . against the paper, and without collusion, conclusive a2-ajnst the legatees, whether parties or not to the issue, . Our statute which orders the, issue and jury trial did not intend to alter the law in this respect.' Under it the practice lias been to dispense witii the formal allegations in writing required by the Ordinary, and to make the allegation
 
 ore tenus,
 
 in general terms, and thereupon the Court directs an issue, upon which the whole matter is tried l>y the jury. Yet as before only a person in intc-rest can be heard against the will, and all such persons may ^ hound either by making themselves parties,
 
 no-minatim
 
 of record to the issue, or by being cited by either side, or by being duly represented. The proceeding was not intended to be strictly one at common law,
 
 *444
 
 with its process, pleadings and judgment between parties. The sole object was to alter the mode of trial, substituting that of a jury with
 
 viva voce
 
 testimony as most approved, for the former one of written allegations and examination upon interrogatories, and a decision by a single,; judge. The next of kin may therefore yet require, if he was not cited, nor conusant of the proceedings, that a probate by the executor may be revoked, and a re-probate had. His right does not arise out of that of the executor, and therefore is not subordinate to it, but primary and in opposition to it. But a legatee is as it were, the
 
 cestui que trust
 
 of whom the executor is the trustee, and the trust goes with the legal title to-which it is attached, the remedy of the
 
 cestui que trust
 
 being primarily against the trustee, aud exclusively against him, unless there be collusion between him and the person in possession.
 

 
 *443
 
 And neither iñfancy, cover-ture, non-resi-, dense, nor that the legatee was not
 
 in esse,
 
 are such civoumstan-cee.
 

 It is probable ^rejection of* a ■will, when offer-the ^executor wouldneitherbind him nor a legatee.
 

 But it is otherwise of an issue formally made up between the executor and one ofthe next of idn, resulting m a sentence against the will.
 

 1789™ (Rmfch.
 
 308,) does not these ^respects,™ but only directs smdawOT mode of pi-Qof.
 

 
 *444
 
 Merely as a testament, our opinion therefore is, that the rejection of this paper is, in the case stated and agreed, conclusive on the executor and the petitioner, in the Court of probate, as in other courts.
 

 The applicants however, insist upon their rights in the real estate as entitling them to this relief, because as to the land, they are not represented by the executor as such. This is clearly correct at common law, for the Ordinary cannot take probate of a will of lands, and if he does, it does not operate to establish the will as a devise. It is insisted that our law has altered that, by giving that power to our Courts of probate, and it is argued by the counsel on both sides, that the grant of the power makes its exercise indispensable to render the devise effectual. From that position however very different and opposite conclusions are drawn by the respective counsel. Those opposed to this application contending that thereby the act of the executor becomes as binding on the devise, as it was before on the legatee; while those for the petitioners urge that they must have a right themselves to prove the will as to the devises, because they were not as to them, represented by the executor, and will therefore be condemned unheard.
 

 
 *445
 
 Devisees are not represented by the executor, and arenotaffectedby a will when propounded by him, parties to the pro-
 

 cannot rc-propound probate of it aTa will of land as well as chattels.
 

 The court cannot concur in the opinion that devises are concluded by the sentence against the will when propounded by the executor alone, without citation to, or intervention by the devisees. We do not think the re-Jation between the
 
 executor
 
 and devisees, was intended to . be altered m any important respects by our statute, any more than that pre-existing between the executor and
 
 the
 
 legatees, especially in the essential'particular ofconclu-c]¡(1g ¿¡]0 devisee. But we do not on the other hand deem tins the proper remedy of the devisee, nor think that he may as ^cv>sce, re,-propound the paper both as a will and a testament, and ask probate thereof as such. We con-^ess ’w0 should think so, if the devisee had no other redress. It is a sacred principle that every person must be heard either by himself, or through one legally representing him, before he shall be concluded in his rights. This principle is of such universal utility and application that it cannot safely be violated in any case. It must be respected whatever inconveniences may arise from it to third persons; but it may, and ought to be so respected, as to produce as little inconvenience to third persons as possible. The question as to the lands is between the devisees and the heir; to which the executor and the legatees are in
 
 no
 
 wise parties, nor can the executor meddle with the land at all. Papers to pass land and personalty are to be executed in different manners, and sustained by different proof, and they may be revoked by different means. Until 1784, wills of land Were proved here, as in England, upon ejectments, or upon an issue out of Chancery. The statutes of that year,
 
 (Rev. chs.
 
 204
 
 and 225,)
 
 prescribe the ceremonies to make a good will of lands, as to their formal execution; and the previous acts of 1715. and 1777,
 
 (Rev. chs.
 
 10,
 
 and,
 
 115,) having required wills to be proved and
 
 deposited
 
 in the County Courts of probate, the sixth section of the act of the second session of 1784 makes such probates, as well made before as those to be made thereafter, sufficient evidence of the devise of lands, and. also attested copies evidence in the same manner as the originals, with a proviso thatupon the suggestion of a fraud in the draw
 
 *446
 
 ing or obtaining it, or any irregularity in the execution or attestation, the original shall be produced. This act did not, we think, render the rejection of the paper as a . will, when offered by the executor, more conclusive oh the devisee, than its probate would be on the heir. As to the latter it is clear it is not conclusive, but must be again proved on the trial upon a proper suggestion, for as Judge
 
 Haywood
 
 asked in
 
 Ward
 
 v
 
 Vickers,
 
 (2
 
 Hay.
 
 164,) why is it to bo produced but to enable the court and jury to decide whether the former probate was right. A proved will is therefore only
 
 prima fade
 
 evidence against the heir. So one not proved is not conclusive evidence against the devise. The act does not require wills for lands to be proven and recorded in order to pass the estate, as the statute of uses, or our act of ins,
 
 (Rev. ch. 7,J
 
 does as to the enrolment and registration of deeds. A will is not pleaded as being proved and recorded, but only duly executed : the circumstances of probate and- recording are alleged to dispense
 
 prima fade,
 
 with further proof, but not as constituting the validity of the instrument. A devisee it seems to us, . may therefore yet bring his action of ejectment upon the will before probate or after the rejection of it at the in-sfiuice of the executor,and establish the will on the trial, or in a proper case, prove it in Chancery as before the act of 1784. The object of that act was to ease the ■devisee in his proofs in ejectment. We should so think upon the words of the act; but no doubt is left in our minds when we consider the effects of an opposite construction. We set out with the principle that the devi-see is not concluded by the act of the executor. If he be not, how is he to avoid the consequences of a refusal of probate to the executor. That is the question. It can only be in one of two ways; either to allow him to prove the will as at common law, or that at his mere pleasure, the former administration is to be annulled, and a reprobate had. In the latter case, the whole personal estate and its administration to creditors and next of kin, is thrown into confusion, and the greatest injustice done to persons who cannot, in any mode be heard in the
 
 *447
 
 proceeding for re-probate. Besides there is a contradiction in the tiling itself. A party claiming under the will cannot ask probate for himself, but for the executor only. Hence the executor would get by means of another person with whom he is in no privity, the very thing which he is precluded from asking for himself; this follows certainly as it seems to us. For the jurisdiction is, as it were
 
 in rein,
 
 and the probate is an entire tiling, and cannot be set aside but
 
 in toto.
 
 Between these inconveniences the election is not difficult, and, we are led without doubt, to choose that which is confined to those persons, whose interests alone are concerned in the pending contest, and which may thus be kept distinct from those of all others. For these reasons the Court cannot concur in the conclusion to which Judge
 
 Haywood
 
 arrived in his note to
 
 Ward
 
 v
 
 Vickers,
 
 and we agree in the judgment given by Judge
 
 Johnston
 
 in that case, though not precisely, as will be seen for his reasons. In support of the opinion entertained by us the case of
 
 Henry
 
 v
 
 Ballard,
 
 (2
 
 Law Repos.
 
 595,) is in point. The probate of the will in the County court was objected to, because the certificate did not state that it was proved to have been attested by two witnesses; but the will was thus proved on the trial of that action by two -witnesses.-»The Court held the will sufficiently proved, and admissible without reference to the certificate of the former probate.
 

 
 *446
 
 . Theii remedy is by proving, it in an ejectment for the devised premises, which may be done when it has been rejected on the allegation of the > executor, without notice to them*
 

 
 *447
 
 The cases of
 
 Ward v Vickers
 
 (3
 
 Hay.
 
 164,) and
 
 Henry v Ballard,
 
 (3
 
 Law Bepos. 595,)
 
 approved.
 

 The only doubt that can be raised upon this subject is suggested by the act of 1789,
 
 (Itero, ch.
 
 308,) which gives the issue and jury trial in all cases, as well of the w'ills of land as of testaments. But we do not think that a serious one. It so far modifies the law as to allow the heir and devisee to be parties to that issue, and doubtless those who are parties to it are bound as in other cases. It is made a mixed proceeding, partly partaking of the nature of one before the Ordinary, and partly of an action of ejectment, or issue out of chancery. Persons may take benefit by it who are not strictly parties to it, and they make themselves parties by intervening, if the expression may be allowed, that is by
 
 *448
 
 taking sides upon record, and they may be bound by being cited and not appearing, or by refusing to take either side upon appearance, Hence the principal effect of the act is to .render unnecessary the resort by the devisee to a court of equity, because in most cases the will can be conclusively established against the heir by one trial at law. But if the heir cannot be cited to appear at law, or if as here the case is in such a state that the devisee cannot directly make up, at law, the issue of
 
 devisavit vel non,
 
 there seems to be no reason why he should not have the usual relief in equity to establish the will, while proof is in his power.
 

 In an issue of
 
 devisavit vel non,
 
 under the act of 1789, the court cannot notice equitable in-erests in land devised in the will. It is sufficient if the de-visee in trust, isa party.
 

 If on the trial of that issue, the trustee betrays the interest of the
 
 cestui que trust,
 
 the remedy of the latter is in Equity.
 

 The question has been thus far considered in the most favorable manner for the petitioners; as if they were the devisees of the land. If that were the case we think they could not succeed in this application, because they would have another remedy more appropriate to that right, and exclusively against those claiming in opposition to it, and unattended by consequences to the prejudice of third persons.
 

 Upon the will before the court, the petitioners are not ■devisees. It may be a question of some nicety whether the legal estate in the land is vested in the executors nr trustees, or whether a power only is given to them, and that the land descended to the heir, Mrs. Redmond. We do not examine the point, because in either event it would not help the petitioners.
 

 Unquestionably a court of probate, as such cannot regard secondary equitable interests arising out of a legal estate in land given in a will, as distinct from the legal estate itself, for the purpose of determining whether the proper persons have had notice. The question before such a court is, whether the paper is duly executed to pass the legal estate. It has no concern with the trusts upon which it is given, or the construction of the will, which must be enforced in this, as in other respects, in another court. If the trustee has violated his trust by misapplying the estate, or refusing to establish the will, or colluding with the heir, the
 
 cestui que trust
 
 must seek bis redress- against him and the party colluding, where
 
 *449
 
 bis own rights are recognised, and can be enforced.
 

 So when a power over land is created by the will, the depository of the power is the only actor in the court of probate,
 

 And whenever the trastee or depository of a power is bound by the sentence of a court of probate; the
 
 cestui que trust,
 
 or the person interested un-de r the power is, in that court, also bound.
 

 If the land descended subject to a power, it is liable •to the same observations. Those equitably entitled under the power must establish the will, and assert their equity as against the executors in chancery; where it may be, they may be compelled yet to execute the power, so as to try the legal title at law, or may be required to make good the loss to the petitioners, as the merits or demerits of their conduct may be made there to appear. But it would be absurd to say that the executor, whether the devisees of the land, or the depositories of a legal power, are not bound in respect either of their estate in, or authority over the land, by the verdict to which they were parties of record. If they are concluded, so we think upon all the principles applicable to trusts, the
 
 cestui que trusts
 
 must be as to all persons but the trustees themselves, and their confederates, in a court, of equity, and as to all persons in every other court.
 

 The detail into which this discussion has gone, was deemed necessary from the. novelty of the enquiries, and the extent to which the argument was carried at the bar. It is important that the subject of probate should be more generally understood, and particularly the effect of the rejection of a will, when offered by the executor, upon the rights of legatees and devisees respectively in our law, as modified by statutes. The Court has therefore thought it a duty to examine those questions minutely, that the grounds might be made plain, on which we feel bound to affirm the judgment of the Superior Court dismissing the petition.
 

 Per Curiam — Judgment affirmed.