MURRAY et al. v. MONIDAH TRUST et al.*

Circuit Court of Appeals, Ninth Circuit.
July 1, 1929.

No. 5666.

William Lucking, of Detroit, Mich., and Nat Schmulowitz, of San Francisco, Cal. (Gavin McNab, Schmulowitz, Wyman, Aikins & Brune, and George B. Harris, all of San Francisco, Cal., of counsel), for appellants.

Sullivan & Sullivan and Theo. J. Roche, all of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. May 11, 1921, James A. Murray, a resident of Monterey county, Cal., died testate, leaving an estate in that county and elsewhere subject to administration. In his last will and testament, bearing date January 26, 1921, the testator declared that theretofore and at various times he had transferred and conveyed to the Monidah Trust, a corporation organized under the laws of the state of Delaware, all or nearly all of his property; that he was the owner of all the issued shares of the capital stock of the corporation; that he had caused to be executed certain certificates in the names of various persons whom he desired to be the owners thereof, evidencing various amounts or shares, which certificates would be found duly executed in an envelope marked "Moni-

dah Trust Stock Certificates," on his person or in one of his safe deposit boxes, and thereupon the testator gave and bequeathed, to the various persons whose names appeared on the faces of such certificates, the executed certificates evidencing the number of shares of the capital stock of the corporation represented by the certificate executed in his or her name. He further devised and bequeathed all the rest and residue of his estate, together with any legacy which might fail for the want of a taker, or for any reason whatsoever, to his wife, Mary H. Murray.

May 21, 1921, the will was filed with the superior court of the state of California for Monterey county, accompanied by a petition by the executor therein named, praying that the instrument be admitted to probate. Thereafter Anna M. Flynn, a half-sister of the deceased, and Agnes Doyle, a niece of the deceased, filed objections to the probate of the instrument as the last will and testament of the deceased. On October 10, 1921, numerous contracts were executed by the parties in interest for the purpose of settling the will contest and various other disputes concerning the estate and its administration. The first of these was an agreement between the Monidah Trust and Anna M. Flynn, reciting that the capital stock of the corporation was $50,000, divided into 10,000 shares, of the par value of $5 per share; that James A. Murray, in his lifetime and at the time of his death, was the undisputed owner of a majority of the shares of the capital stock; the death of Murray; the filing of the will for probate; the opposition to the probate of the will by Flynn; that after the death of Murray, his nephew, James E. Murray, claimed to be the owner of 4,000 shares of the capital stock, evidenced by certificates found among the effects of the deceased at the time of his death, and had instituted actions in various courts to determine his title to said 4,000 shares, and that such actions were still pending undetermined; that there was also pending certain litigation between James E. Murray and the corporation, involving certain property rights; that the control of the corporation was affected by the litigation over the ownership of the 4,000 shares; that it was for the best interest of the corporation and all shareholders that the litigation involving the validity of the will, the ownership of the 4,000 shares, and all other litigation between James E. Murray and the corporation, should be settled and compromised; that Murray had that day agreed to settle the litigation involving the ownership of the 4,000 shares and all other litigation referred to by instruments in writing contemporaneously executed, and it

was thereupon agreed that the corporation would pay to Flynn or to her attorneys the sum of $97,000. On the same date an agreement of like import, and containing like recitals, was entered into between the corporation and Agnes Doyle and other relatives, wherein the corporation agreed to pay to them the like sum of $97,000. On the same date a further agreement was entered into, to which all the heirs of the deceased except the children of T. J. Murray, a deceased brother of the testator, were parties. In this agreement it was provided that the two contestants should dismiss their objections to the probate of the will, and all parties to the agreement consented to the admission of the will to probate, waiving any right of appeal from the order, and agreeing that at no time thereafter should they or either of them take or cause to be taken any proceedings calling in question the validity of the will. It was then agreed that 5,988 shares of the capital stock of the corporation should be distributed to certain parties to the agreement in the proportions therein specified.

Under the plan of distribution agreed upon 500 shares distributed to Mrs. T. J. Murray were subject to the condition that none of the children of T. J. Murray, deceased, should file any objections to the probate of the will or institute any proceedings attacking its validity. In the event any such objections were filed or proceedings instituted, provision was made for the distribution of the 500 shares and to make up any deficiency, should a deficiency exist. Other provisions of the agreement are not deemed material to the question now before us. On the same date a further agreement was entered into by the same parties, reciting that it was the desire of all parties concerned to liquidate the assets of the corporation and to distribute its property among the stockholders according to law after the payment of its debts. It was thereupon agreed that, as soon as practicable after the distribution by the superior court of the capital stock of the corporation to the parties thereto entitled, in accordance with the previous agreement, all of the assets of the corporation should be divided among its then stockholders in the proportions in which they then owned the stock, such assets to be distributed in kind when practicable, and when not practicable to be sold and the proceeds divided in like manner. It was further agreed that the office and principal place of business of the corporation should be changed from Butte, Mont., to San Francisco, Cal.; that the board of directors should consist of two persons, one designated by the widow, Mary H. Murray, and the other by the nephew,

James E. Murray, and that, in the event the two directors so chosen could not agree on any matter connected with the management of the affairs of the corporation, the dispute should be immediately referred by them to a designated person, whose decision should be final. It was further stipulated that there should be no stockholders' meeting of the corporation prior to the first Monday of June, 1922; that prior to that date, or as soon thereafter as practicable, the parties should take the necessary proceedings to have distributed to the widow, Mary H. Murray, 1,000 shares of the capital stock of the corporation; that, as soon as such 1,000 shares should be so distributed, the same, together with the 4,000 shares claimed by James E Murray, and represented by certificate No. 6, and 3 additional shares outstanding in the name of James E. Murray, aggregating in all 5,003 shares, or a majority of the capital stock, should be pooled for the election of directors of the corporation until the objects and purposes of the agreement should be fully accomplished. The parties to the agreement further agreed to transfer the 5,003 shares in such manner as might be deemed necessary or advisable to carry out the objects and purposes of the agreement.

Pursuant to these agreements, a partial decree of distribution was entered April 29, 1926. July 29, 1921, James E. Murray commenced an action in one of the state courts of California against the widow, Mary H. Murray, her son, Stuart Haldorn, the special administrator of the Murray estate, the corporation, and the Crocker National Bank, as depositary, to establish his title to the 4,000 shares heretofore mentioned. October 13, 1921, three days after the execution of the above contracts and agreements the executor of the Murray will was made a party defendant, and on the following day a judgment was entered in favor of the plaintiff, establishing his right and title to the 4,000 shares as against the several defendants. The complaint averred that this judgment was the result of a secret and collusive agreement between the widow and nephew that 2,000 of these shares should go to the former and 2,000 to the latter and that this secret agreement was later carried out. The complaint further averred that prior to October 10, 1921, May Murray, a sister of the deceased, claimed to own by gift from the deceased a large amount of notes, judgments and certificates of deposit, aggregating upwards of $300,000, which belonged in large part to the corporation, and that by a secret arrangement and agreement with Mary H. Murray, the widow, and with the knowledge and consent of the special ad-

ministrator, and the active aid and assistance of counsel acting for the special administrator, the executor, and the widow, May Murray commenced an action in one of the state courts of California to quiet her title to the notes, judgments, and certificates of deposit as against the executor of the will; that the complaint in the action was filed October 11, 1921, and the answer two days later, and that on the following day a decree was entered in favor of the plaintiff, establishing her right and title to the notes, judgments, and certificates of deposit. It is then averred on information and belief that the amount of this recovery was divided between the widow and May Murray, the plaintiff in the action; that the plaintiff, May Murray, has since died, and that a large part of the assets so recovered have come into the possession of her brother, the defendant James E. Murray, who represented her in the proceedings and arranged to divide the property of the corporation with the widow, Mary H. Murray, who is one of the defendants.

The present suit was instituted by two of the parties to two of the agreements of October 10, 1921, and by the administrator of a third, representing in all 450 shares of the capital stock of the Monidah Trust. It was apparently a stockholders' suit in behalf of the corporation, but the complaint does not so allege; nor is the suit brought in behalf of other stockholders who might desire or elect to come in as parties plaintiff. A motion to dismiss the original complaint was sustained on the ground of misjoinder of causes of action. An amended complaint was then filed, omitting the cause of action which the defendants relied on as constituting the misjoinder. A motion to dismiss the amended complaint was likewise sustained. Thereafter a second amended complaint was filed, which was open to the same objection as the original complaint, and a motion to dismiss was granted, followed by a final decree. From this decree the present appeal was prosecuted.

Briefly stated, the contention of the appellants is twofold: First, that under the several agreements to which we have referred the assets of the Monidah Trust should be distributed to the stockholders on the basis of 6,000 shares, not on the basis of the entire capitalization of 10,000 shares; and, second, that the corporation was entitled to recover the notes, judgments, and certificates of deposit, or the proceeds thereof, which had been converted by May Murray, deceased.

We find nothing in the agreements referred to to support the first contention thus

made. There may be some apparent omissions and misrecitals in them, but these in no wise tend to support the claims advanced by the appellants. Thus, inasmuch as the agreement for the distribution of the stock of the Monidah Trust was executed by all the heirs, except the children of T. J. Murray, deceased, for whom provision was made one would naturally expect to find a provision for the distribution of the entire capital stock of the corporation, but the fact that it contained no such provision does not enlarge the rights of those for whom express provision was made, nor does it impair the rights of stockholders for whom no provision was made. There were 12 shares of stock not mentioned in the agreement, but all parties concede that the owners of these 12 shares are entitled to participate in the distribution, notwithstanding their omission from the agreement. Again, the agreements between the Monidah Trust and the contesting heirs recited that James E. Murray had that day agreed to settle the litigation involving the ownership of the 4,000 shares, and other litigation by separate instruments in writing contemporaneous therewith, and no such settlement appears in any of the instruments referred to in the complaint. Whether there was some further agreement between the different claimants to the 4,000 shares does not appear, but the fact that a consent judgment was entered three days later, determining the title to these shares, would seem to indicate the existence of some such agreement. In any event the provision to which we have referred, and other provisions and recitals throughout the different agreements, recognize the continued existence and validity of the 4,000 shares, and no provision is any place found for their cancellation. On the contrary, it was expressly agreed that these shares should be pooled for purposes of control, and that the assets of the corporation should in the end be divided amongst its then stockholders in the proportion in which they owned stock. We find nothing in the agreements, therefore, lending the slightest support to the contention made by the appellants, and inasmuch as the agreements, executed for the very purpose of settling all disputes and contests over the will and the estate, are not challenged for either fraud or mistake, they are controlling upon the parties thereto, and controlling upon the courts. Any allegations found in the complaint, inconsistent with the provisions of the agreements, or any unwarranted deductions therefrom must be disregarded, and when the rights of the parties are measured by the terms of the agreements alone we see no escape from the conclusion that the assets of the corporation should be distributed pro rata among its stockholders on the basis of 10,000 shares.

As to the second cause of action, little need be said. More than seven years elapsed between the date of the judgment in favor of May Murray, quieting her title to the promissory notes, judgments, and certificates of deposit, hereinabove referred to, and the filing of the second amended complaint. In the meantime May Murray, an indispensable witness, had died, and the right to prosecute an action such as this, if one ever existed, has long since been barred by laches and inexcusable delay.

The decree is affirmed.