RuffiN, C. J.
 

 The illustrations, which the presiding Judge found himself under the necessity of submitting to the jury, to enable them to take just views of the questions for their decision, shew very plainly, that he might, and, as we think more properly ought to have told them, that the script was not duly proved. The Act of’84, c. 225, after reciting, that the Act of the previous session of the same year required the attestation of witnesses to prevent fraud and impositions on persons in their last sickness or from their want of knowledge, and that it may be proper to make exceptions from that rule in particular cases, proceeds to enact, among other things, that where a will shall be found among the valuable papers or effects of any deceased person, or shall have been lodged in the hands of any person for safe keeping, and every part thereof is proved by three credible witnesses to be in the hand writing of the deceased person, it shall be deemed a sufficient will in law.
 

 This seems plainly to require affirmative and direct proof as to the fact, that it -was deposited with some one as a will, or was found, after the party’s death, among his valuable things. But it is said, that the Act does not prescribe the mode or degree of proof, or the rules of evidence for establishing those facts. And it is thence inferred, that the question is to be left to the jury in each case, if there be any circumstance from which it might be supposed, that the paper had been deposited as the statute prescribes. And it is argued, that, here, the death of the party abroad, and the production of the instrument in the state it was, by his surviving partner, and confidential friend, now also dead, are cir
 
 *340
 
 cumstances of that character. But we think otherwise. Those circumstances are entirely • inconclusive of the facts, . , . . , . _ . that the script was left with any person or found m any par-^cu^ar place, and those facts must be proved, under the statute. If the circumstances enumerated, were,
 
 per se,
 
 to be charged in an allegation propounding these papers, the allegation could not be admitted to proof, but must be dismissed. The Act makes such deposite evidence of the publication of the particular instrument, in the place of the direct evidence of that fact by the formal execution of the instrument, the declaration by the party, that it is his will, in the presence of the witnesses, and their attestation. Therefore, as a ceremony of publication, it is indispensable that the depos-ite, or finding under the requisite circumstances, should be made to appear by such evidence, as goes to the point, and, if believed, proves it affirmatively and distinctly. That is as necessary as the shewing it to be in the hand writing of the deceased party. When it does not appear, that it was written by some other person, it is .as probable, that it might have been written by the supposed testator as by any body else. Yet it is
 
 not
 
 for the jury to say
 
 arbitrarily, that it
 
 was written by the deceased, without any direct evidence, the one way or the other. On the contrary, the Act requires, that the hand writing shall be proved by at least three
 
 credible
 
 witnesses. It is true that no particular number of witnesses is prescribed, as to the deposite of the script; because the lodging or finding it is not, like hand-writing, matter of opinion, but matter of fact; about which there can be no mistake, if the witness deposing to it, possess ordinary capacity and integrity. The fact itself, however, is to be found on proof,
 
 and not on
 
 conjecture; and therefore it is not to be left to the jury, on evidence that makes it merely a matter of conjecture. There is no trace of this paper, until produced by Thurber sometime after the death of the party abroad. But how Thurber came by it, whether the deceased left it with him, or sent it back by the ship in which he sailed or otherwise, or whether he found it among valuable or waste papers, there are
 
 *341
 
 no means of determining. All the guards of the statute would be destroyed, by probates upon such vague and uncertain conjectures of publication.
 

 It was then said, that the fact would have appeared by the declarations of Thurber, and that they ought, to have been admitted as a part of the
 
 res. gestee.
 
 But of what
 
 res ges-tee
 
 were those declarations a part? Slerely the production of the instrument. As to the deposite of the paper with him or his finding it among the deceased’s papers, the declarations were but the narrative of a past transaction, and not a part of one then enacted. If he could have proved those facts it is the misfortune or folly of these parties not to have offered the instrument for probate during his life, when they could have had his oath. His declarations
 
 in pais
 
 are not competent.
 

 It was then insisted, that the long possession of the land devised, from 1804 to 1840, by those to whom the paper purports to devise it, and the production of the instrument by those persons, dispense with further' proof of execution, and of the capacity of the deceased, and authorize a verdict and sentence in favor of it as the party’s will. This is urged, because it is said it would be sufficient evidence of a title by devise in an ejectment. Admitting that it would be a point, on which we intimate no opinionyet it would not follow, that it was proof of the script as a will in this proceeding. To say it would, is to confound two very different things. In ejectment the question Is general on the title. In certain cases of ancient wills, where the instrument has been in the proper custody, and a long, possession consistent with It, the title Is adjudged in the devisee without proof of the will on the trial — the law deeming it out of the partyrs power t o make proof at that late day, and that those circumstances supply, as presumptions, the place of proof. If these parties could have used this Instrument in that way, they were at liberty to do so. They did not, however, think proper to run that risk, and rely on It, as an unproved will, In ejectment, but instituted this proceeding, and thereby undertook
 
 *342
 
 this instrument directly, as a will, and ask,
 
 that
 
 uPon such proof it shall be declared, and be recorded as the proved will of the party deceased. From the nature of the therefore, the proffered proof must be made; and it is to no purpose to say, that, in another proceeding, and upon a different state of the question, the proof would be dispensed with.
 

 We are not sure that we understand, what was meant by the appellants’ asking leave to suffer a nonsuit, as the term is not appropriate to proceedings in a Court of Probate. But •from analogy to actions at law, we suppose thejobject was to withdraw from the Court before a verdict was rendered on the issue,
 
 devisavit Tel non, so
 
 as to
 
 prevent the delivery
 
 of a verdict, and leave the party at liberty to institute another proceeding of the same kind. If so, we think it inconsistent with a proceeding of this sort and contrary to the nature of /the jurisdiction of the Court of Probate. The instrument propounded is always brought into Court in the first instance. and the jurisdiction is
 
 inrem.
 
 The inquiry is whether the party deceased died testate, or intestate, and if the former, whether the script propounded be his will or a part of it, or not.
 

 When once regularly raised, the Court must pronounce on those questions, without reference to the presence of this or that person; for the sentence, until annulled, binds all the world. If a cause is about to be heard or under a hearing, and a party in interest is not furnished with full proof and has been surprised, his course is, for cause shewn, to get an order for opening the case to farther proof and deferring the pronouncing of sentence. Though not in form, it is in substance not materially different upon an issue made up and tried in a Court of Law under our statute. It is analogous to the trial of an issue out of Chancery — only, the one is at the instance of the chancellor to satisfy his conscience, and the other the law compels the Court of Probate to make up in every case of a disputed will. From the nature of an issue, he, who alleges the affirmative, opens the case, and for that
 
 *343
 
 reason the party propounding the will is commonly spoken of as the plaintiff. But it is inaccurate; for properly speaking, there is neither plaintiff nor defendant, but both sides are equally actors in obedience to the order directing the issue. In neither case is the party in the affirmative at liber-tjr to withdraw and defeat a trial more than the party in the negative. If injustice be done on the trial, the relief is to get that finding set aside by the Court, which ordered the issue, and have it tried again. We have not known of any other course. It is especially proper in the Court of Probate. After an allegation, propounding a will has been received, until it has been decided, and the paper pronounced against, administration cannot be granted; for the jurisdiction to grant administration is only where there is an intestacy, and that is always declared before or at the granting of the letters administration, and recited in them.
 
 Slade
 
 v
 
 Washburn,
 
 3 Ired. 557.
 

 It would be most absurd to keep the question of intestacy ever open by allowing one, setting up a pretended will, to propound and repropound it, and at his pleasure to baffle the Court and hinder sentence from being finally pronounced, by withdrawing from the Court. It cannot be so. On the contrary, the paper itself, the
 
 res
 
 is
 
 sub judice,
 
 and the Judge gives his sentence for or against it, without noticing particular persons. The Court endeavors that all parties in interest shall have notice, that theinstrument is
 
 sub lite-,
 
 and, that done, the sentence binds persons having such notice as much as if they were parties acting in the proceedings.
 
 Redmond
 
 v
 
 Collins,
 
 4 Dev. 437. The object of the motion in this case could not, therefore, be effected ; for if the party could be allowed to withdraw and had withdrawn from the cause, he could not have taken the instrument with him. It still remained in the custody of the law, and the Court must have proceeded to sentence against it, which would have concluded this person as it would others, while the sentence remained in force, and, further, would “ have concluded him, once act-
 
 *344
 
 jng jn the cause, from re-propounding the instrument. As ^ PaPer was only propounded by the devisee, as a will of real estate, our view is confirmed to the points arising out of • the statute.
 
 (A.)
 

 Per Curiam, . Sentence affirmed.