Ruffin, C. J.
 

 If the acts of the Superior Court, on which Bell’s competency,as a witness depends, had been those of the County Court, it would hardly be a question, that he was effectually discharged from both his office and the cause, so as to be admissible as a witness. The proceeding is
 
 in rem,
 
 and the object of the court of probate eyey is, .to ,haye .all parties in interest .cited to see proceedings. When .cited, .they may either stand by passively, or fake an,active pa.rt.an either side, according .to their interest or inclination. Thus, every party in interest may become a party in the .cause at any time before the decision. The. admission o.f Sawyer, therefore, would certainly have been proper in the court of the first resort.
 

 Ordinarily, too, every one may withdraw from a 'cause when he chooses. This will not be denied in a case, in which the party, desiring to withdraw, claims an interest under or against the script for himself merely. Such withdrawal by one named a devisee or legatee, may cause the court to condemn him in costs, and, no doubt, generally would: but it can affect the rights of no other person. He leaves the script iji the possession of the court, and the .cause still pending, and the instrument must still be proved in the way required by the court of probate.
 
 St. John's Lodge
 
 v.
 
 Callender,
 
 4 Ired. 335. By his withdrawing, indeed, the Aoqr.t of probate may vary the form of its acts according to .circumstances. But when he is not the only person propounding the instrument, but there is another who is also liable for the costs, and undertakes to pay all the costs jthat may be incurred, or have been incurred, and secures them to the satisfaction of the court, in case they should be adjudged to the opposite party, there seems to be no reason why the court of probate should not dismiss a party from the cause, without condemning him in costs, or holding him liable therefor. Even in cases strictly at common law, if the purposes of justice require it, the court will discharge a person who is bound for the costs ; as if one, who
 
 *100
 
 is a surety for an appeal, be needed as a witness, the court will cancel the bond in which he is bound, and allow another to be substituted for it.
 
 McCulloch
 
 v.
 
 Tyson, 2
 
 Hawks, 336. jjere Beq ha(j n0 personal interest in the matter, or, at all events, only as executor, and that he was willing to give up; and being thus willing, there was no reason why he might not retire from the cause without responsibility for the costs, so far as that responsibility was dependant upon the rights of the opposite party, or upon Bell’s private interest in, or motives for instituting the suit since the opposite party was fully se-Clired in the costs, as we must assume. At all events, the court dipt discharge Bell from the cause, without holding him liable for the costs, and without objection thereto by the opposite party, upon the score of his right to look to Bell for the posts. Therefore, whether that order in the cause was right or wrong, if it had been opposed, it is clear that Bell’s liability for the costs, as an objection to his competency, when subsequently offered as a witness, had no foundation in fact. Although it might have been proper at one time to have kept him liable for the costs, if it had beep required, yet he had been discharged, and there was no method by which he could be again subjected to the posts.
 

 The other objection to his competency arose out of his relation to the cause and the court, by reason of the office of executor, conferred on him by the will. That circumstance certainly distinguishes him from those who claim but a personal benefit under the instrument. As executor, it was his duty to exhibit the will in the court of probate, as its proper depository. That duty he performed.
 
 Jt
 
 was also his duty to propound it for probate, preparatory to his ultimate duty of obtaining the probate, when made, by taking the oath of an executor ; or else, to renounce the office, so that the will might not be unexecuted, but letters of administration with the will annexed granted to some other person. An executor has the absolute right of refusal at any time before he has undertaken the office, or intermeddled with the estate. In this case, there is no suggestion of such intermeddling. And we think he
 
 *101
 
 has not assumed the office definitively by propounding the will, so as to preclude him from the right of renouncing, or, at all events, so as to preclude the court of probate from the power of dismissing him. The probate of a will, and the granting of the probate to, or taking the probate by, the executor, are distinct things. The former is the
 
 act,
 
 as it is technically called, of the court, recording the proof of the script and pronouncing in favor of it as a will; and the latter is an official copy of the will, and of that
 
 act
 
 with a certificate, or open letters thereon, under the seal of the proper office, that the executor has taken. the oath of office. He is then executor complete of an established will. Sometimes the probate is before one tribunal, and those letters issue from another. Thus, by the act of 1715, c. 10, the Governor, the general court, or the precinct court, had cognizance of the probate of wills, while the letters testamentary could only issue out of the Secretary’s office, under the seal of the colony, and signed by the Governor, and countersigned by the secretary, after the executor’s taking the oath for performing the will, before the secretary or a justice of the peace. That the executor does not assume the office by propounding the will, is clear from the power exercised of granting letters
 
 ad colli-gendum
 
 or
 
 pendente lite.
 
 It is not an act which made him responsible to creditors, unless he also intermeddled with the effects; and it is upon the ground that the recourse of creditors should not be divided, that the law will not allow an executor, after intermeddling, to renounce at his pleasure. But, after the probate of the will, it has always been usual in this State, to allow an executor to refuse the office, and, much more, pending a contest about the probate. Indeed,-merely swearing in and taking probate by the executor, do not debar the court from dismissing the executor.
 
 Mitchell
 
 v.
 
 Adams,
 
 1 Ired. 298.
 

 As to the sufficiency of the executor’s refusal in this case, if made in the proper court, there can be no doubt. It is true, the refusal must be by some act recorded in the court of probate. But the court may treat several matters as refusals,
 
 *102
 
 though they be not expressly so; as if the executor refuse to ta^e l*le oat^ w^en convened, that may be recorded as a refusal to take the office. Toller’s Ex. 42. Here, both by personal declaration in court, and by a written instrument executed in court, he renounced, and the court, as its act, accepted and recorded ¡them as a refusal.
 

 The chief doubt in the.case, if there be any, is as to the authority of the Superior Court to allow of the executor’s refusal, as the ground of dismissing him both from his office and the cause. By the act of 1777, the County Court is to “ take the probate of wills,” and order them to be recorded in proper books, and make orders for the issuing of letters testamentary, ,and all original wills shall remain in the clerk’s office of the County Court, except when removed before any other court, upon any controversy. That act also provided for an appeal for any person thinking himself injured by order of the court for letters testamentary, or letters of administration, and declared that the Superior Court should have cognizance thereof, and determine the same, and upon such determination, should proceed to grant the letters to the persons entitled to the same. Under that act, the probate was upon allegations and prqofs directed to the court alone, as to the spiritual court in England, a.nd without the intervention of a jury. By the words of the act, .the .whole .case was removed by appeal into the Superior Court, which determined who should be executor or administrator^ or, in other words, whether there was a will or not, and consequently had all incidental powers necessary to the exercise of the general powers of the Ordinary in those respects. The act of 1789, c. 308, afterwards defined the method more particularly of the probate of wills, and, among other things directs, that if a will be contested, its validity shall be tried by a jury, on an issue to
 
 he
 
 made up under the direction of the court. This
 
 act is
 
 silent upon the subject of an appeal; but, undoubtedly, either under the special provision of the 58th section of the act of 1777, before quoted, or under the general provision in the 75th section, for an appeal from every sentence, judgment, or decree of the
 
 *103
 
 County Court, parties were entitled to, and have always obtained appeals in testamentary causes, since the act of ’89, as' before. The whole case was taken up by the appeal, so that the Superior Court had plenary jurisdiction to proceed to trial
 
 de novo,
 
 and decide the whole matter. Hence, in a contest between two persons, which of the two was entitled to administration, upon appeal it was held in the Superior Court, that there was a general jurisdiction in that court, and that administration should not be granted to either of the applicants in the County Court, but to a third person, who applied for the first time in the Superior Court;
 
 Blunt
 
 v.
 
 Moore,
 
 1 Dev. & Bat. 10. And it has also been held, where upon petition the County Court had allowed a script to be re-propounded, and, accordingly, an issue,
 
 devisavit vel non,
 
 was made up and tried, and an appeal taken, that the whole case was taken up, and the petition was dismissed in the Superior Court for its insufficiency.
 
 Harvey
 
 v.
 
 Smith,
 
 1 Dev. & Bat. 186. It is true, that the Revised Statute,'' c. 122. s. 5, retains only the provision of the act of ’77, that any perspn claiming a right to execute a will, who shall think himself injured by an order of court for letters testamentary, may appealand it5 omits the words, which expressly confers the cognizance there-' of, and the power to grant letters testamentary and of administration. But the omission is not material, we thirik. Directing the appeal, in itself confers a jririsdiction of every' thing involved in the cause; and when the proceeding is
 
 in rem,
 
 it naturally carries the whole subject,inasmuch as that is necessary
 
 to
 
 a full and final determination of the controver-’ sy. It is probable, the omission in the Revised Statute was occasioned by the established usage of the Superior Courts,under the act of 1777, not to grant letters of administration,- or letters testamentary in those courts, but to determine the' question of right to them, by trying the issue, and pronouncing thereon for or against the will, and then remitting the cause and the will to the County Court, to the end, that the will should be recorded and the original kept there, as proved in theSuperior Court, and that letters testamentary or of admin
 
 *104
 
 istration should isue therefrom. This practice grew up from the provisions in the act of ’77, that all original wills should be kept among the records of the County Court, and from the greater convenience of granting letters testamentary or administration there, inasmuch as the justice would be better qualified than a judge, to determine upon the sufficiency of the sureties for administration, and also inventories and accounts current would be more accessible.
 
 Ritchie
 
 v.
 
 McAuslin,
 
 1 Hay. 220.
 
 McNeill
 
 v.
 
 McNeill,
 
 2 Dev. 393. By an examination of the record, in
 
 Hodges
 
 v.
 
 Jasper,
 
 1 Dev. 459, we perceive, that the original will was there also remitted to the County Court of Tyrrell. Indeed, no member of the court remembers but one exception from that practice, which was in the case of
 
 Harper
 
 v.
 
 Gray,
 
 2 No. Ca. Law Rep. 613, where it was, doubtless, an oversight. But even there the letters of administration were granted in Randolph, and the Superior Court expressed no approbation of the will’s having been kept in the Superior Court, but only held that such an irregularity could not be reached in the way there attempted. The omission in the Revised Statute, if intended to curtail the powers of the Superior Court, really cuts off only a jurisdiction of granting letters of administration or testamentary in that court, which was never in
 
 fact
 
 exercised, but leaves the whole power of determining conclusively the right to such letters, namely, by deciding whether there be a will or not, and by determining to whom in particular the letters shall be issued. That necessarily involves the power to accept the renunciation of the executor, and thereupon ordering an administration to be granted by the County Court, either to some particular person, or to some fit person. But in truth the general grant of jurisdiction of the appeal, includes the authority to decide upon the whole case
 
 de novo,
 
 and, with that view, to perform or allow whatever the original and inferior court of probate might have done or allowed.
 

 Our conclusion therefore is, that there was no error on the trial of the issue, or the sentence of the court for the will. This judgment will be certified to the Superior Court, to the
 
 *105
 
 end that the said court may remit to the County Court the original will there remaining, with a transcript of the proceedings and probate thereof in the Superior Court, that the said will may be recorded in the County Court, and that further proceedings may be had thereon according to law.
 

 Per Curiam, Ordered accordingly.