MARTHA C. CALLAGHAN et al., Appellants, *v.* ADELIA M. CORBIN, Respondent.

(Argued January 14, 1931; decided February 10, 1931.)

*George S. Mittendorf, Edward M. Cameron, Jr.,* and *Margaret Smith* for appellants. The agreement was simply a contract for work, labor and services. The question is simply one of contract law, and the appellants having performed the work, labor and services required by the agreement should be compensated therefor. (*Sprague* v. *Webb,* 168 App. Div. 292; *Holman* v. *Johnson,* 1 Cowp. 341.) The agreement was not contrary to public policy. (*Veazey* v. *Allen,* 173 N. Y. 359; *Hazelton* v. *Sheckells,* 202 U. S. 71; *Mills* v. *Mills,* 40 N. Y. 543; *Marsell* v. *Maires,* 203 App. Div. 646; *Oscanyan* v. *Arms Co.,* 103 U. S. 261; *Weil* v. *Neary,* 278 U. S. 160; *Tool Co.* v. *Norris,* 2 Wall. 45; *Atcheson* v. *Mallon,* 43 N. Y. 147.) Public policy requires the enforcement of the contract involved in this action, and is not violated by it. (*Minehan* v. *Hill,* 144 App. Div. 854; *Kemp* v. *Kemp,* 36 Misc. Rep. 79; 12 C. J. 322; *Adams* v. *Outhouse,* 45 N. Y. 318; *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473; *Kloberg* v. *Teller,* 103 Misc. Rep. 641; *Steele* v. *Drummond,* 275 U. S. 199.)

*John J. Crawford* for respondent. Where the matter is one of common interest a party to a compromise agreement cannot, by an undisclosed collateral arrangement, obtain any benefit beyond that secured to him by the agreement itself. (*Bliss* v. *Matteson*, 45 N. Y. 22; *Adams* v. *Outhouse*, 45 N. Y. 318; *Russell* v. *Rogers*, 10 Wend. 473; *Frost* v. *Gage*, 3 Allen, 560; *Hanover Nat. Bank* v. *Blake*, 142 N. Y. 404; *Breck* v. *Cole*, 4 Sandf. 79; *Solinger* v. *Earle*, 82 N. Y. 393; *Almond* v. *Hamilton*, 100 N. Y. 527.) The question is not whether any one was injured or deceived by the secret agreement, but whether agreements of this character have an evil tendency. (*Oscanyan* v. *Arms Co.*, 103 U. S. 261; *Veazey* v. *Allen*, 173 N. Y. 359; *Weil* v. *Neary*, 278 U. S. 160; *Hazelton* v. *Sheckells*, 202 U. S. 71; *Tool Co.* v. *Norris*, 2 Wall. 45; *Atcheson* v. *Mallon*, 43 N. Y. 147; *Marsell* v. *Maires*, 203 App. Div. 646; *Mills* v. *Mills*, 40 N. Y. 543.)

CRANE, J. Floyd S. Corbin died in January of 1924, leaving him surviving his wife, his mother, Mary V. Corbin, a brother, Homer Corbin, and three sisters, Mrs. Urban, Mrs. Callaghan and Mrs. Gregory. By a last will and testament he bequeathed to his wife his automobiles, jewelry, silverware, etc., and all the rest, residue and remainder of his estate he left in trust to his executors to pay the income thereof to his wife for and during her natural life, and upon her death to pay the principal of the said trust fund " to the persons who shall at the time of the death of my said wife answer to the description of my next of kin as defined by the Statute of the State of New York and in the proportions fixed thereby." Memorandum exhibits indicate that the estate left by the deceased was over $800,000.

For some reason not made evident, the probate of the will was contested by the brother and sisters, and the widow sought to allay their objections by satisfying their wants. At that time the widow was approximately fifty-

seven years of age, and the mother about seventy-five.

A compromise was effected wherein $140,000 was taken out of the corpus of the estate and divided between the widow on the one hand and the mother, brother and sisters on the other. The division resulted in giving $65,000 to the widow, the remaining $75,000 being divided among the contestants as follows: $30,000 to Adelia M. Corbin, the mother, $10,000 each to the three sisters and one brother, and $5,000 to the three infants, the children of the brother, Homer Corbin. Of course these children only had a contingent interest, dependent upon their father dying before the widow if the will were probated, and would receive nothing if the contestants were successful.

Upon application made to the Surrogate under section 19 of the Decedent Estate Law (Cons. Laws, ch. 13; formerly section 24 of the Personal Property Law), the proposed compromise was approved and thereafter carried out. The balance of the estate over and above this $140,000 used in settlement was held in trust under the provisions of the will.

Apparently the widow, Mrs. Corbin, was not friendly with her brother-in-law, Homer, who lived in Chicago, and her sister-in-law, Mrs. Urban, who lived in Baltimore. She could not approach them as " she was not on speaking terms with them." She, therefore, requested Mrs. Callaghan and Mrs. Gregory to intercede for her and get them to withdraw their objections to the probate of the will by accepting the settlement or compromise. She promised these two ladies that for their services she would pay them $7,500, and thereupon she signed the following memorandum:

" I, Adelia M. Corbin honestly and sacredly pledge myself to divide $7,500 Dollars between Ora and Martha as soon as I receive the amount from the estate.

" *May 11th*, 1925.     ADELIA M. CORBIN."

This action is brought to recover the money, as the plaintiffs performed the requisite services and procured their brother, Homer, and their sister, Mrs. Urban, to withdraw their objections to the probate and accept $10,000 each in settlement.

So far, the defendant has succeeded upon the plea that this contract or agreement was illegal as against public policy and good morals within the doctrine of such cases as *Adams* v. *Outhouse* (45 N. Y. 318); *Russell* v. *Rogers* (10 Wend. 473); *Hanover Nat. Bank* v. *Blake* (142 N. Y. 404), the idea being that it is illegal for one acting with others in a matter of common interest to secure to himself any profit or advantage over his associates by any secret or undisclosed agreement or understanding. We are unable to see the illegality in this contract.

Under the will offered for probate, the widow had a life interest, and the brother and sisters remainders, as next of kin, according to section 98 of the Decedent Estate Law as it was in 1924. The latter filed objections to the will. The fact that they all filed objections is a mere incident; they were not obliged to act together, and their interests were solely individual. There is no law which prevented the widow from giving any one of them a sum of money to withdraw his or her objection, and there is no law which required them to act as a class or with equality. One could have withdrawn his objections upon request, or voluntarily; another could have withdrawn his objections to the probate on the payment of money, and the rest could have continued the contest, or settled the suit themselves. There is no law which prevented the legatee from making such settlement as she pleased with any one or more of the contestants. (*Schoonmaker* v. *Gray*, 208 N. Y. 209.) It is conceded that there would be nothing illegal in paying Mrs. Callaghan and Mrs. Gregory the $7,500 promised if they were strangers to the estate, and not possible next of kin. The fact that they are and were such does not

make the contract illegal between them and the promisor, solely because they might receive additional sums as compensation for services in procuring others to withdraw their objections to the probate.

Homer Corbin and Mrs. Urban have never raised any objection to the compromise, or claimed that it was illegal for the plaintiffs to take this money; in other words, they do not claim to have been deceived. What representations were made to them by the plaintiffs is not stated. If the plaintiffs in any way deceived or misrepresented the situation to Homer and Mrs. Urban it might be that the latter would have some claim upon the plaintiffs for their share of secret profits or for fraud. No such claim is suggested and no such demands have ever been made, so far as the record discloses. We merely have the defendant making the promise, accepting the services, and now insisting upon the illegality of her promise, in order to reap a benefit.

A compromise among creditors rests upon the assumption of equality, and that all will be treated alike. Payment of the debts cannot be made in full, and the fund which does exist must be distributed equally, if there is to be a settlement and a release. The implication of law is that the debtor will promise no larger proportion to one than to the other. The obligation is placed upon him not only by the rule of good faith, but also by section 61 of the Debtor and Creditor Law (Cons. Laws, ch. 12) to see that the equality of treatment obtains. There is no such understanding, and no such implication in dealing with various claimants, heirs and next of kin to an estate. The debtor is under a duty, legal and moral, to pay his debts; he owes this duty alike to all his creditors. A legatee is under no duty to heirs or next of kin; he owes them nothing. A person may will and dispose of his property as he pleases, subject to the present limitations of the Decedent Estate Law. Many times dissatisfied heirs and next of kin file shallow objections in an attempt

to set aside the will or squeeze out some money from the beneficiaries. There is no law which requires the persons interested in the will to deal with these disinherited relatives with equality.

*Adams* v. *Outhouse* (45 N. Y. 318) related to a promise made in consideration of acquiescing or participating in the concealment of estate assets — a clear fraud on the distributees.

The Decedent Estate Law, section 19, was enacted to permit compromises with adverse claimants subject to the approval of the Surrogate. (*Fisher* v. *Fisher*, 253 N. Y. 260.) Where the interest of infants, incompetents, non-residents or absentees is involved or lessened by any secret agreement a different question might arise. No infants' interest was affected by the compromise in this case. This is conceded. The infant children of Homer Corbin would have taken nothing whatever if the will had been set aside or probate refused. Their father was alive. By this compromise they received $5,000 which would not be, and will not be, increased by the non-payment of the $7,500 involved in this litigation. The utmost claimed by the defendant is that this $7,500 might have gone proportionately to Homer and Mrs. Urban as well as to the plaintiffs. Homer and Mrs. Urban, as before stated, have been perfectly satisfied with their settlement.

For these reasons the judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, KELLOGG, O'BRIEN and HUBBS, JJ., concur; LEHMAN, J., not sitting.

Judgments reversed, etc.