FLETCHER H. BAILEY, MRS. ROSA BAILEY WHITE, MRS. MARY BAILEY WILEY, AND ROBERT SMITH, COLLECTOR OF THE ESTATE OF S. R. SMITH, v. J. L. McLAIN, ADMINISTRATOR OF H. A. SMITH; R. A. COLLIER AND A. B. RAYMER, TRUSTEES; MRS. ELLA S. FOSTER, MRS. MITTIE O. LEE, J. MARTIN SMITH, EFFIE C. SMITH, ROSA SAIN, MRS. ILA ARKINSON, MRS. ALMA MONTGOMERY, MRS. CLARA ALBEA, FRANKLIN WILLIAMS AND MRS. ELVA SHEEK HEDRICK.

(Filed 1 March, 1939.)

**1. Wills § 17—Nature of caveat proceedings in general.**

One interested person may caveat a will, C. S., 4158, and upon the filing of the caveat all other interested persons must be cited to "see the proceedings," C. S., 4159, and they may come in and align themselves as they will, and there is no basis, either statutory or arising out of interest, that the heirs at law, who are frequently beneficiaries under the will, make a common fight to set the will aside.

**2. Same—A caveat is a proceeding in rem.**

A caveat to a will is a proceeding *in rem* to determine the validity of the paper writing by probate in solemn form, and the validity of the will cannot be established by common consent of the parties, nor may it be renounced in part and upheld in part, but the proceedings establish either that the paper writing is valid *ab initio* and concludes all heirs and distributees who have been cited, or that it is void, in which event the heirs at law take, not because the will has been vacated, but because there never was a will.

**3. Same: Executors and Administrators § 24—Court may not ignore will and compromise estate under agreement of interested parties.**

Even though all parties are *sui juris* and before the court, the court may not, ordinarily, ignore the provisions of the will and compromise the

BAILEY *v.* McLAIN.

estate in accordance with the agreement of the parties, since the courts may not "make a will" for the decedent. The exception to this rule when the agreement is a family settlement, in which instances the jurisdiction of the court is extended, is pointed out.

4. **Wills § 29—An heir may make separate agreement with propounder to withdraw objection to the will.**

Since an heir or distributee cited in caveat proceedings may take either side of the controversy or remain neutral, as he will, and since heirs, as a class, do not necessarily make a common fight to have the will vacated, an heir or distributee may withdraw objection to the will by agreement with the propounder either with or without a pecuniary consideration, and any monetary consideration for such agreement passes to him by virtue of the contract between himself and propounder and does not inure to the benefit of the heirs as a class.

5. **Same—Heirs not entering into agreement held not entitled to share in sum received by caveating heirs for withdrawing objection to the will.**

The will in question bequeathed a note to a stranger to the blood. Some of the heirs at law filed a caveat to the will, and other heirs at law cited to "see the proceedings" advised the caveators that they would take no part in contesting the will. Thereafter the caveating heirs, after negotiations, made an agreement with the legatee to withdraw objections to the will for a monetary consideration. The issue of *devisavit vel non* came on for trial, and was answered in favor of the will by the jury. The heirs who took no part in contesting the will instituted this action against the caveating heirs to recover a proportionate part of the monetary consideration for the agreement. *Held:* The agreement was neither made for the benefit of the heirs as a class, nor was the consent of all the heirs necessary to the validity of the agreement, since the interest of each heir is separate and distinct, and each had opportunity to take whatever action in the proceedings he thought were to his best interest, and since the caveating heirs are entitled to the monetary consideration for the agreement by virtue of their contract with the legatee and not as a part of decedent's estate, nor does equity demand a division among all the heirs.

6. **Equity § 3—**

Since under our practice both law and equity are administered in the same action in the same court, equity may be considered merely the tool by which the law is enabled to make a finer adjustment of individual rights consonant with commendable human conduct.

CLARKSON, J., dissenting.

APPEAL by defendants from *Warlick, J.,* at January Term, 1938, of IREDELL. Reversed.

On or about the 15th day of October, 1934, H. A. Smith died, leaving a last will and testament, in which he left a legacy of a $35,000.00 note to James F. Brawley, a stranger in blood to the testator. The will was duly probated in common form, and thereafter, the defendants, heirs at law and distributees of the estate of H. A. Smith, who would be entitled

to the estate had Smith died intestate, filed a caveat to the will.   The plaintiffs, who also would have been entitled as distributees under the statute in the same manner and form as the defendants, were cited under C. S., 4158 as interested persons.

The defendants (objectors and caveators) communicated with the plaintiffs in the case at bar and were notified by them that they had decided to have nothing to do with the contest of the will—"We have decided not to join in this litigation or caveat."

The plaintiffs contributed nothing, financially or otherwise, to the proceeding by which the will was contested.   They were never required, under C. S., 4159, to take sides, and remained aloof.   Subsequently, the legatee opened communication with these defendants and a compromise was effected between them, according to which the legatee paid the defendants $15,000.00 in consideration of their withdrawal from the contest.   The plaintiffs did not participate in this agreement.

Thereupon, the proceeding, which under the statute took the form of a probate of the will in solemn form, was continued, and issue of *devisavit vel non* was submitted to the jury, and answered in favor of the will, and judgment was entered accordingly.

After this proceeding had terminated, the plaintiffs, conceiving that since they constituted one-third of the heirs at law or distributees of the estate of H. A. Smith under the statutes of descent and distribution, they were entitled to share, brought suit against the defendants to recover $5,000.00, or one-third of the proceeds of the compromise.   Trial by a jury was waived by the parties to the controversy.   The facts were agreed upon and found by the judge substantially as above related, and, thereupon, the judge concluded, as a matter of law, that the plaintiffs were entitled to one-third of the proceeds of the compromise and rendered judgment in favor of the plaintiffs for recovery thereof.   From this judgment the defendants appealed.

*B. C. Brock and Land & Sowers for plaintiffs, appellees.*
*Raymer & Raymer and Grant & Grant for defendants, appellants.*

SEAWELL, J.   We think the conclusions of law reached by the trial court are not warranted by the facts.   These conclusions, with the reasoning by which they were apparently reached, are two: First, that because there was objection to the will by some of the heirs at law of H. A. Smith, and the plaintiffs are also heirs at law, and a compromise was made removing the objections, and the will was thereafter probated in solemn form and was sustained by a verdict of the jury and the judgment of the court cutting off all further objections, they are, by reason

of these facts, entitled to a proportionate share of the money paid for the "cease and desist" agreement made by the caveators; second, that, being fully entitled thereto, they are not guilty of any conduct which would estop them from enforcing that right.

We are not concerned with the second conclusion, since the burden was not on the defendants to show estoppel until the plaintiffs had established the right; and this they have not done. It is to be noted that plaintiffs base this right, not on any actual contract or agreement with the defendants, express or implied, since, admittedly, the facts do not warrant such a claim, but on the mere operation of law. It assumes either that the compromise money was a part of decedent's estate or that, at least, the consent of plaintiffs was necessary to the final determination of the contest over the will, since they are also "heirs at law" and cited in the proceeding; and in either event we come back under the shadow of descent and distribution.

We think these conclusions are based on an erroneous conception of the nature of the original proceeding under which, after caveat, the will was probated in solemn form, and of the relation of the parties concerned to that proceeding, to the legatee and propounder, and to each other. Since there is no evidence of an actual participation by the plaintiffs in the compromise or contract between these defendants and Brawley, the legatee, the trial court was evidently under the impression that consent of all the persons who might have been interested in the estate was necessary to the establishment of the will once objection thereto had been made by caveat, and that any compromise effected must necessarily include all such persons; and that, therefore, the compromise must, as a matter of law, be regarded to have been made for them all alike. Indeed, the principal case cited by plaintiffs in support of their contention, *In re Seip's Estate,* 162 Pa., 423, 30 Atl., 226, is so interpreted by plaintiffs' counsel.

In some jurisdictions the courts are permitted, either by virtue of statutes enacted for that purpose or by long practice of the court, to deal with the estates of decedents in practical disregard of the will when all the parties interested are before the court and are *sui juris. Callaghan v. Corbin,* 255 N. Y., 401, 175 N. E., 109, 81 A. L. R., note 1187 (see page 1190). The laws of Pennsylvania are liberal in this regard. It scarcely needs the authorities which we hereafter cite to remind the practitioner that such is not the case here.

It is claimed that the case at bar is one of first impression by our court. However this may be, we think the matter solvable by the application of simple principles, long recognized here and abundantly established by judicial opinion.

The right of any caveator or objector to make his separate treaty of peace with legatees or propounders upon such terms as may be agreed upon is uniformly recognized, as will appear from citations of authority elsewhere in this opinion. The reason becomes clear when we examine and properly understand the proceeding provided by our laws for the contest of wills and their probate in solemn form.

In this State it takes only one interested person to caveat a will. C. S., 4158; *In re Thompson,* 178 N. C., 540, 542, 101 S. E., 107; *Armstrong v. Baker,* 31 N. C., 109, 114. It becomes the duty of the clerk thereupon to bring in interested persons, C. S., 4159; and, in some instances, it is conceivable that it might be incumbent upon the caveator to see that this duty is performed. When they come in they may align themselves as they will. They are cited only to "see proceedings" and not as parties. *Redmond v. Collins,* 15 N. C., 430; *Mills v. Mills,* 195 N. C., 595. It is the caveator's quarrel until some person interested joins him in the fight; and even then there is nothing in the law to prevent a litigant from making a separate and individual contract to desist from further opposition. There is no law compelling other heirs at law to join him in the fight or prevent their joining his adversaries, or to compel them to abandon their position on top of the fence. As a matter of common occurrence, since usually at least some of those who would be in the line of descent and distribution are beneficiaries under the will, we find a goodly number fighting with the propounders; others may "run with the hounds and hold with the hare," and others may, as did the plaintiffs in this case, stand aloof, or give positive notice to the objectors that they will not join in an attack on the will.

Caveat is, therefore, not a proceeding brought in the interest of the heirs at law as a class. In many instances they would be embarrassed in financial interest and in others in good conscience at the breaking of the will. There is no plane of cleavage in interest that would justify a legal presumption that the heirs at law are making a common fight, and the statute does not contemplate it. *Hutson v. Sawyer,* 104 N. C., 1, 10 S. E., 85, and cases cited; *St. John's Lodge v. Callender,* 26 N. C., 335; *Sawyer v. Dozier,* 27 N. C., 97; *Syme v. Broughton,* 85 N. C., 367; *In re Will of Brown,* 194 N. C., 583, 140 S. E., 192. The fact that the proceeding is *in rem* argues against any solidarity of attack, since the question is whether the paper writing presented is the last will and testament of the decedent. If it is not, it cannot be made so by common consent. *Holt v. Ziglar,* 159 N. C., 272, 74 S. E., 813; *Syme v. Broughton, supra.* The law does not regard the will as a thing to be sustained *sub modo* only after something has been sweated out of it for the heirs at law. Mental capacity and duress are conditions which cannot be

altered *nunc pro tunc* by mere agreement of the parties on an issue of *devisavit vel non*. When attention has been drawn to these principles, so firmly planted in our law, it should be clear that any compromise must be dehors the proceeding and does not necessarily inure to the benefit of the "heirs at law," or, more properly speaking, in this case, distributees. Where the will is set aside, of course, the laws of distribution and inheritance apply; not because the will is vacated, but because there never was a will. In that event, no person entitled through those laws is estopped because of any want of cooperation in the proceeding, or by any act which does not convey his interest in the inherited property.

While the solemn probate of a will upon the issue of *devisavit vel non* concludes all heirs and distributees who have been cited, or who have knowledge of the proceeding, with respect to the property conveyed in the will, *Mills v. Mills, supra,* they have not been deprived of any right by the action of the withdrawing caveators, but only by their own failure to urge it or assert it when opportunity was presented. If the will stands, it must be regarded as valid *ab initio,* and they had no rights to be forestalled or concluded.

This State does not recognize the doctrine of partial renunciation whereby the estate may pass in part by the will and the renounced portion by descent.

It must be conceded that if the title to the money paid in compromise depends upon the contract, it cannot be diverted from those who made that contract by virtue of any power in the laws of descent and distribution, or upon the theory that the contract, to be successful in its purpose, must have been made by them all.

As stated, in some states, when all the parties are *sui juris* and before the Court, jurisdiction is given by statute to settle the controversy in terms which ignore the will, or, rather, under these statutes a compromise of the estate itself may be effected as if only the property rights in the estate were involved. (New York has such a statute in section 19 of the Decedent Estate Law.) The courts of some states have gone further and recognize such a jurisdiction, based on the inherent powers of the court. Neither is true in North Carolina, where the courts still decline to "make a will" for the decedent, agreeable to the desire of the parties interested; *In re Will of Westfeldt,* 188 N. C., 702, 125 S. E., 531; unless the doctrine of family settlement applies, when the jurisdiction is somewhat extended; *In re Will of McLelland,* 207 N. C., 375, 376, 177 S. E., 19. In such cases settlements appeasing family difficulties and promoting harmonious relations have been upheld as within the jurisdiction of the court. *Reynolds v. Reynolds,* 208 N. C., 578,

BAILEY *v.* McLAIN.

622, 182 S. E., 341. And it has even been suggested that the family honor may be a consideration to intrigue the jurisdiction. *Price v. Price,* 133 N. C., 494, 504, 41 S. E., 885; *Bohannon v. Trotman,* 214 N. C., 706. None of these considerations were presented or could be presented to the court in the original proceeding, since the legatee is a stranger in blood.

In *English v. Crenshaw,* 120 Tenn., 531, 110 S. W., 210, certain collateral heirs contested a will which left all the property of the testator to the widow. A compromise was effected and it was held that the compromise money passed by virtue of the contract between the parties and not as a part of the estate.

In *Fidelity & C. Trust Company v. Commonwealth of Kentucky,* 78 A. L. R., 710, it is said: "Whilst the legatees could not receive the property under the will until it was duly established, neither could the heirs inherit the property unless the will was set aside." And speaking of the caveator: "While his right to maintain the contest of the will is derived from his relationship to the testator, his title to the money came from the contract with the legatees."

In *Callaghan v. Corbin,* 255 N. Y., 401, 175 N. E., 109, where the legatee or devisee agreed with certain of the heirs at law to pay them to induce others to withdraw objections to the will, and the question of public policy became involved, the court expressed its conclusions as to the rights and relations of the compromising parties amongst themselves, so strongly expressive of the view we take, we are tempted to quote: "So far the defendant has succeeded on the plea that this contract or agreement was illegal as against public policy and good morals . . . the idea being that it is illegal for one, acting for others on a matter of common interest, to secure to himself any profit or advantage over his associates by a secret undisclosed agreement or understanding. We are unable to see the illegality of this contract. Under the will offered for probate the widow had a life interest and the brothers and sisters remainders as next of kin . . . The latter filed objections to the will. *The fact that they all filed objections is a mere incident. They were not obliged to act together and their interests were solely individual. There is no law which prevented the widow from giving any one of them a sum of money to withdraw his or her objection, and there is no law which required them to act as a class, or with equality. One could have withdrawn his objections to the probate, on the payment of money; and the rest could have continued the contest or settled the suit themselves."* In this opinion, *Cardozo, C. J., Pound, Kellogg, O'Brien, and Hubbs, JJ.,* concurred. See also *Schoonmaker v. Gray,* 208 N. Y., 209, 101 N. E., 886.

In *Grochowski v. Grochowski* (Neb. App.), 109 N. W., 742, in a similar situation, it is said: "The rights of no persons other than the contracting parties were affected nor would the settlement affect the due administration of justice. There is no evidence of a connivance to defeat or defraud the insane sister of any of her rights. She was not a necessary party to the agreement and we find no reason for discharging the decree  . . ." See *Seaman v. Coley,* 178 Mass., 478, 59 N. E., 1077. In this case the question of secrecy maintained in the negotiations between propounders and caveators was presented as it is here, and as to that the Court said: "If the matter had been known to everyone it would be absurd to say that the plaintiff was not free to consult his own interest in opposing or withdrawing opposition to the codicil as well for money as without it." Citing *Leach v. Fobes,* 11 Gray, 506, 71 Am. Dec., 732; *St. Mark's Church v. Teed,* 120 N. Y., 583, 24 N. E., 1014.

Quoting from *People v. Kaiser, supra:* "The share of the estate passing to the heirs by virtue of the agreement did not pass by virtue of the statute of descent or by virtue of the will, but under the agreement." See *Baxter v. Treasurer and Receiver-General,* 209 Mass., 459, 95 N. E., 854; *Matter of Cooke's Estate,* 187 N. Y., 253, 79 N. E., 991; *Estate of Graves,* 242 Ill., 212, 89 N. E., 978. Analyzing the decisions in these cases, the opinion in *Fidelity & C. Trust Co. v. Com., supra,* states they hold: "That the compromise of a will contest under which money is paid to a contestant is a matter of contract, and the tax is imposed upon the amount devised by will or received by inheritance, and not upon money collected by virtue of a contract among living persons."

We think the law of this case is aptly expressed by the Court in *Janess v. Ambler,* 62 N. H., 569: "There is no equity in the plaintiff's claim; she declined to join in the appeal, or in the agreement; she opposed both, and she paid no part of the expenses. If the appeal prevailed, she would be entitled to her full distributive share, much larger than her devise. If it failed, she would still receive all that was given her by the will, and in neither event was chargeable with any part of the expenses. Negotiations under the written agreement might be attended with large costs, and whatever the result she was liable for no part of them. It would be inequitable to permit her to enjoy the benefits of proceedings in which she had opportunity but refused to join, and for the charges of which she was not responsible."

It is strongly urged that the equitable jurisdiction of this Court is involved upon the apparent assumption that the distribution demanded by the plaintiffs is required, according to the statutes of descent and distribution; *In re Seip, supra.* We think the case comes under the

BAILEY *v.* McLAIN.

law of contract, but whether resting in law or equity, we see no difference between the two in terms of equality and justice.

Perhaps jurisprudence might be richer if we could forget the fictional build-up of repugnance between law and equity which now and then tries to suffuse the law with the pink of shame; if we ceased to regard equity as a beneficent *jus superior* which, on occasion, throws delinquent law out of the temple and installs a new god. Since, in this State, both law and equity are administered in the same action and in the same court, the historical distinction might be reduced to the function of enlightenment, and thus become absorbed in the law. Equity is merely the tool by which the law is enabled more perfectly to trace the finer lines in the pattern of justice. It is neither altruistic nor prodigal, simply just. We do not feel inclined to impose upon the defendants in this case a generosity which these principles, which are after all but an adjustment of individual right to commendable human conduct, do not seem to require.

On the barren outer banks of Eastern North Carolina, the race of "banks ponies" has survived for two hundred years against the forces of nature with little or no help from man. Their tenacity of existence is heroic. They foal their kind upon the stark bosom of nature with a faith that reminds one of Sidney Lanier's "The Marshes of Glynn :"

> "As the marsh-hen secretly builds on the watery sod,
> I will build me a nest on the greatness of God."

These little animals have learned many tricks of survival. It is said that when they are thirsty they gather in groups of three or four and dig until the water filters through in sufficient quantity. If a pony who has not assisted in their labors comes up for a free drink, they turn their heels upon him and drive him away. This is equity on Ocracoke.

Defendants in this case can derive their right to the funds in controversy through a contract, in which the plaintiffs had no part. Counsel whose name appear on the pleadings and judgment do not purport to represent the plaintiffs; the caveators were not either actually or impliedly their agents; and they had directly repudiated the whole proceeding in the positive statement: "After due consideration, we have decided not to join in the litigation or caveat." They are not legally entitled to share the proceeds of the contract.

The judgment is
Reversed.

CLARKSON, J., dissenting: The majority opinion in the instant case permits a part of the heirs of a testator, as caveators, through a secret agreement with propounder and for a cash consideration, to withhold

evidence of the invalidity of a will and thus insure its probate. From such a view of our law, I respectfully dissent.

The plaintiffs here elected not to enter into, and actively contest, the probate of the will. Yet, if the will had not been probated, they would have received a third of the proceeds of a $35,000 secured note. As they were cited to appear in the proceedings, they were bound by the judgment entered therein. Their one-third interest in the note was contingent upon the outcome of the caveat proceeding. When the propounder herein is permitted to buy his peace by trading with the caveators, the propounder and the caveators, by a secret agreement, thereby deprive plaintiffs of their one-third interest in the note.

A general family settlement, of course, would be valid where it is "fair," "equal," and "deliberately assented to as a proper and just family agreement." *Bailey v. Wilson*, 21 N. C., 182, 189. But, the entire theory of defendants' position is a denial that this settlement was a general, family settlement. Further, when plaintiffs now seek to ratify it and thus make it a valid, family settlement, the defendants refuse to let them do so. Accordingly, this was not—and does not purport to be—a general, family settlement.

A careful search of all of the cases heretofore decided by this Court upon the subject of compromise settlement of will controversies indicates that each of these agreements receiving the court's approval was a general, family settlement. This rule, in my opinion, should not be further extended to permit compromise settlements by a part of the heirs. The solemn will of a testator, who is no longer present to defend the disposition of his property, should not be disregarded at the whim of a few of those directly interested who do not favor the terms and conditions of the will. If the wishes of a testator are to be put at naught by those who survive him, it is a salutary rule which requires that all the persons interested shall be parties to the agreement. This, I take it, is one of the fundamental reasons why caveat proceedings are treated as matters *in rem:* "The purpose is to determine the nature of the script for the benefit of all whom it may concern, and not specially for that of any particular person, whether he be before the court or not. The proceeding—the script, the issue—are not of the persons before the court; they cannot control or direct the same as parties—that is the sole province of the court—as to the issue; they are not parties, and hence, whether they take part on one side or the other of it, they cannot take or suffer a judgment of nonsuit, nor can they dismiss the proceeding." *Merrimon, J.,* in *Hutson v. Sawyer,* 104 N. C., 1 (3).

As *Ashe, J.,* pointed out in *Syme v. Broughton,* 85 N. C., 367 (369): "It may be readily seen how easily the intentions of testators could be

frustrated, and the grossest injustice and fraud practiced, if the actors in an issue of *devisavit vel non* should be permitted to exercise unrestricted control over the issue; for instance, the propounders, by collusion with the caveators, might offer the will, prove its execution according to the forms of the law and then defeat it by admitting the insanity of the testator or that the will was made under improper influence; and, on the other hand, a paper writing wanting in the requisites of a good will, having for example only one subscribing witness, might be established by the caveators simply admitting that it was executed according to the requirements of the statute." As a practical matter, the rule of the majority is open to exactly the same objections. Admittedly, the propounder and the caveators here could not do directly (compromise by nonsuit the caveat proceedings) what the majority opinion permits them to do indirectly (compromise the caveat proceedings by withholding evidence in support of their sworn caveat). The quotations above make it abundantly clear that there is a public and general interest in the establishment of the validity of a will which is more extensive than the private interests of the two or three most active protagonists and antagonists in the caveat proceeding. "It is the duty of the court as an obligation resting upon it as a court, as a duty *ex officio,* and for other reasons of public policy, to see to it that the wishes of the one who is no longer in existence as to the lawful disposition of that which was once his shall be fully carried out." *In re Staab's Estate,* 166 N. W., 326 (327), 166 Wis., 587, holding that an agreement for a cash consideration not to contest a will confers no rights which will be enforced by the courts. An "agreement, followed by the withdrawal of the objections, and the willful omission of the objectors to submit to the court the proof as to the facts which had prompted them, in good faith, to raise material issues as to the execution and validity of the proposed will, in the status of which 'the whole world has an interest,' resulted in the wrongful suppression, by collusion between them, of a judicial inquiry." *Taylor v. Hoyt,* 242 N. W., 141 (142), 207 Wis., 520. Accordingly, the *Taylor case, supra,* is authority for the position that such an agreement will be stricken down by the courts to the end that an opportunity will be given the courts to consider the validity of the will without the suppression of any part of the pertinent evidence. For the same reason that private parties are not permitted to compromise criminal cases, in my opinion, the right of the interested parties to compromise a will caveat should be a limited one, so restricted that only a compromise binding upon all of the interested parties will be permitted.

There is a second—and somewhat narrower—ground for challenging the view of the majority. In all the states—even those applying the

most liberal rules permitting compromises of caveat proceedings—that is one condition which is universally enforced: ". . . a contestant cannot compromise anything beyond his own personal interest in the contest. . . ." 68 C. J., "Wills," p. 909. The dominating purpose of the compromise upheld in the instant case was not merely to settle the rights of the parties to it; in express terms, the condition precedent of the contract was that the "will" be probated immediately. Such a result—the very purpose of the secret contract—directly affected the interests of plaintiffs, none of whom were parties to the agreement. Plaintiffs were entitled to assume that the propounder would be required to carry the burden of proof as to the formal execution of the will (*In re Will of Chisman,* 175 N. C., 420), yet, the propounder (through an agreement not known to the plaintiffs), in effect, relieved himself of any real burden in this respect by securing assurance through the agreement that such evidence as he offered would not be contested. When the effect of a particular view in a specific case is to accomplish a result which is *technically* correct but *practically* wrong, this Court should— as it has in the past (*In re Will of Averett,* 206 N. C., 234 [238])— look beyond form to the substance of the case.

As was written in *In re Crawford's Estate,* 182 Atl., 252 (254), 320 Pa. St. Rep., 444: "Where contestants of a will receive money in virtue of a settlement of a contest, they may not exclude from a share therein one who is equally entitled, although not an active contestant of the will and not a party to the settlement."

In my opinion, our decided cases furnish little support for the doctrine of this case which permits caveators to file a solemn caveat, sworn to as to the supporting facts, and thereafter—in return for a cash consideration—to withhold those facts from the court. I would be less than candid if I permitted what I regard as "bad law" to pass without a challenge into our reports.