## McGEE v. MARBURY.
### No. 1101.

Municipal Court of Appeals for the
District of Columbia.

Argued July 23, 1951.

Decided Aug. 14, 1951.

Harold P. Ganss, Washington, D. C., for appellant.

·G. Bowdoin Craighill, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This litigation had its origin in the United States District Court for the District of Columbia. There Charles R. McGee filed against Leonard Marbury individually and as executor of the estate of Alice Lee Russell, deceased, a petition for the construction of the will of said decedent and for a money judgment for income or interest on certain shares of stock which were part of the estate and which were to become part of a life estate for the benefit of McGee. It will be helpful to relate something of the background of the case.

Alice Lee Russell died in February 1946, leaving a will in which she named Charles R. McGee, the plaintiff, and Leonard Marbury, the defendant, as executors. Among other bequests she left $10,000 in trust to Leonard Marbury with directions to pay the net income therefrom to her nephew, the same Charles McGee, for his lifetime and at his death to deliver the corpus and any accumulated income thereon to her niece, Mildred M. Marbury. Testator also left the residuum of her estate to Mildred who is the wife of the defendant and the sister of plaintiff McGee. A caveat to the will was filed by the sole surviving sister of testator, a number of her brother's children joining therein. None of these caveators was to receive anything under the will. At the trial as to the validity of the will,

Charles McGee, though nominally a caveatee by virtue of his designation as executor, voluntarily gave testimony opposing probate of the will. The trial of the caveat resulted in a verdict on all except two issues. Thereafter the parties in interest negotiated a settlement and entered into a formal compromise agreement, dated May 19, 1948, in which they recited that they had agreed upon a compromise and settlement of their differences. In the agreement various concessions were made, all parties consented to the probate of the will, sums of money were allotted to the surviving sister and her brother's children, and this resulted in a decrease of the residuum of the estate which was ultimately payable to Mildred M. Marbury, wife of the defendant in this action. Most pertinent to the present case is the provision in the contract whereby: "Charles R. McGee agrees to renounce in writing his appointment as one of the Executors named in said will and waives any and all right he may have to any commission or compensation as Executor, it being agreed that Leonard Marbury will decline to serve or will resign as Trustee of the trust fund of $10,000 created by Item Fifth of said will; that Charles R. McGee will then take appropriate steps to have a substitute or successor Trustee appointed and upon such Trustee qualifying, said Leonard Marbury, as Executor, agrees to pay such Trustee the sum of $10,000 in cash out of the assets of said estate and thus establish said trust fund."

Also it was agreed that each party to the agreement was to pay the compensation of his own attorney but that $1000 would be paid out of the funds of the estate to Harold P. Ganss, attorney for Charles R. McGee, in payment for his services in the litigation. The agreement was signed by Leonard Marbury and his wife Mildred, by Charles R. McGee, Annie R. McGee, and the three attorneys in the case.

Complying with the compromise agreement, Marbury relinquished his trusteeship and by his check as executor paid over to the substituted trustee, Liberty National Bank, the $10,000 stipulated in the agreement. This sum the bank accepted and issued for it a formal receipt under seal reciting that it "hereby acknowledges receipt of the sum of Ten Thousand Dollars ($10,000.00) from Leonard Marbury, Executor under the will of said decedent, in full settlement and satisfaction of the legacy for that amount bequeathed to Leonard Marbury in trust for Charles R. McGee and others, as set forth in Paragraph Fifth of the will of Alice Lee Russell, dated January 3, 1946, (the said Leonard Marbury having renounced his right to serve as Trustee), and as set forth in Paragraph No. 3 of the Settlement Agreement dated May 19, 1948, by and between Leonard Marbury, Mildred M. Marbury, Charles R. McGee and others." Marbury filed his final account as executor which was approved by the probate court in April 1949.

On January 5, 1949, the action which is now before us was filed by McGee against Marbury in the District Court claiming interest on the $10,000 trust fund. After a pre-trial of the case it was ordered certified to the Municipal Court in accordance with Code 1940, Supp. VII, § 11–756(a). The trial in the Municipal Court was had without a jury. Plaintiff McGee took the position that as beneficiary of the trust estate he was entitled not only to have that sum paid over to the trustee but was personally entitled to interest thereon from the date of the death of the testatrix. Marbury defended on the ground that the compromise agreement had settled all matters of dispute between all the parties, that no question of interest had been reserved, and that when he paid over the $10,000 to the Liberty National Bank he stood discharged of any further liability.

In lieu of sworn testimony the trial judge by stipulation received the statements of counsel who also presented various writings as exhibits. In a written memorandum the judge found in favor of defendant and the case now comes here on plaintiff's appeal.

We think there can be no question that legatees under a disputed will can, like other litigants, settle their differences and make an effective and binding compromise agreement respecting their rights. Murray v. Monidah Trust, 9 Cir., 33 F.2d 379, certiorari denied 280 U.S. 597, 50 S.Ct. 67, 74

L.Ed. 643; Callaghan v. Corbin, 255 N.Y. 401, 175 N.E. 109, 81 A.L.R. 1184. Appellant does not question that a compromise was made in this case. But he says that because interest was not mentioned in the compromise agreement, he now has the right to claim it. He cites no decision to support that view.

■ There were two money considerations moving in favor of McGee under the compromise agreement. One was Marbury's payment of the full $10,000 without deductions, to the substituted trustee for the benefit of McGee, and the other was the payment of $1000 out of the estate to McGee's attorney (while, as we have seen, all the other parties paid their own attorneys). These two payments were made; and yet plaintiff came into court demanding that the settlement figure be increased by the payment of an additional sum as interest. It may be conceded that the general rule is that a legatee who has been given a life estate is entitled to interest thereon from the time of testator's death. Reid v. Dodge, 44 App.D.C. 558. But we know of no decision holding that such right may not be relinquished by compromise, and we think that was done in this case. The general rule is that a compromise and settlement operates as a merger of and bars the right to recovery on any claim included therein. The compromise agreement is substituted for the pre-existing claims or rights, and the liabilities of the parties are measured and limited by the terms of the compromise agreement. Swan v. Great Northern Ry. Co., 40 N.D. 258, 168 N.W. 657, L.R.A. 1918F, 1063. See also Crisp County v. S. J. Groves & Sons Co., 5 Cir., 73 F.2d 327, 96 A.L.R. 391; United States v. Chouteau, 102 U.S. 603, 26 L.Ed. 246; County of Dakota v. Glidden, 113 U.S. 222, 5 S.Ct. 428, 28 L.Ed. 981; Morris v. Giddings, 115 U.S. 300, 6 S.Ct. 65, 29 L.Ed. 403. Directly involving a claim for interest, under circumstances similar to those in this case, was Maloy v. Board of Com'rs, 10 N.M. 638, 62 P. 1106, 52 L.R.A. 126. There a county treasurer was in default of moneys due the county and had actually received bank interest on the sum due. Nevertheless the court held that because the county had made a final settlement with him, under which he paid the principal, interest could not be recovered on the claim.

In our own jurisdiction the District Court has recently held (per Morris, J.) that the District of Columbia "may not accomplish a final settlement of a contract under one interpretation and then subsequently repudiate such settlement and secure further advantages by a different interpretation." Bopst v. District of Columbia, D.C.D.C., 90 F.Supp. 286, 290. The United States Court of Appeals affirmed, 86 U.S.App.D.C. 416, 183 F.2d 428, ruling that Judge Morris was "entirely correct," and adopted his opinion as the decision on appeal.

■ There was also another dispute during the trial—this a factual one. Plaintiff McGee insisted that the question of his right to interest had been expressly reserved in negotiations between his counsel, Mr. Ganss, and defendant's counsel, Mr. Craighill. Defendant contended that there had been no such reservation. As to this the trial judge found that plaintiff was "mistaken, and that no separate oral agreement for the future settlement of the disputed item of interest, income, or increment was entered into; there simply was no meeting of the minds as to said alleged separate oral agreement, and consequently there could be no contract in that respect." We think there was ample evidence, both oral and documentary, to support that finding.

Indeed there was evidence which would have justified the trial court in going still further and ruling that before McGee's attorney signed the compromise agreement and before Marbury paid over the sums specified therein, it was understood that he was not to pay any interest. This evidence was presented by Mr. Craighill who said he told Mr. Ganss, "No matter what the law is, my instructions are no interest is going to be paid on that, and you can sign this agreement or not. But Mr. Marbury instructed me that the deal is off; we are not going to settle this case unless Mr. Russell [Charles R.] McGee is willing to

waive interest. * * * You can afterwards talk to Mr. Marbury or I can talk to him and, if we can persuade him to change his mind, all right; but my instructions are that this is a flat sum of $10,000.00. That is a matter of compromise settlement, that this is a flat sum of $10,000 without interest, and there isn't one word in this agreement that says that interest is to be paid." Ultimately, after considerable delay, Mr. Ganss did sign the agreement. Though Mr. Ganss' version was at variance with that of Mr. Craighill, the evidence just quoted if accepted would, as we have said, support a finding that there was an affirmative agreement that Marbury was not to pay interest.

Moreover, this evidence should properly be considered together with the other evidence that after some five months deliberation and more negotiations and correspondence the Liberty National Bank, by letter of its trust officer dated November 3, 1948, notified Mr. Craighill that: "As you know, I have finally got the directions of Mr. McGee through his attorney, to accept a check for $10,000.00 due us as substituted trustee under the last will and testament of Alice Lee Russell, deceased. The receipt for it which you prepared has been duly executed and is enclosed herewith." Then the money was finally paid over and accepted by the trustee and the last step in the compromise agreement was completed. We do not say these circumstances compelled a finding for defendant, but we are very clear in our belief they fully justified such a finding. Even if the case were viewed in a light most favorable to appellant, we would have to say, as was said by the United States Court of Appeals in a case involving a compromise agreement, that "The testimony as a whole * * * is confused" and to say, as that court did, that "On this state of a record, we will not disturb the conclusion of the court unless we find clear error." Maiatico v. Holden, 81 U.S.App.D.C. 1, 153 F.2d 654.

In a separate assignment of error, appellant complains that by keeping the case under advisement for almost four months, the trial judge committed an abuse of discretion. Naturally we deplore long time lapses between trial and decision, but in the case before us we think we would have no right to say that the delay in and of itself constituted reversible error.

Affirmed.